# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-1482/3103

_____

| | |
|---|---|
| Sallieuh Jalloh, | * |
| | * |
| Petitioner, | * |
| | * Petitions for Review of |
| v. | * Orders of the Board of |
| | * Immigration Appeals. |
| Alberto Gonzales,[1] Attorney General | * |
| of the United States of America, | * |
| | * |
| Respondent. | * |

_____

Submitted: June 24, 2005
Filed:  September 22, 2005

_____

Before RILEY, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

RILEY, Circuit Judge.

Sallieuh Jalloh (Jalloh), a native and citizen of Sierra Leone, petitions for review of a final order of exclusion and deportation issued by the Board of Immigration Appeals (BIA). The BIA affirmed the August 19, 1998, decision of the Immigration Judge (IJ), holding the IJ did not err in making an adverse credibility finding, and dismissed the administrative appeal. Jalloh also appeals the BIA's denial

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is substituted for his predecessor, John Ashcroft.

of his motion to reopen. Jurisdiction arises under 8 U.S.C. § 1105a(a) (1994). Implicit in the grant of authority to review a final BIA order is the authority to review an order denying a motion to reopen the final order. Bae v. INS, 706 F.2d 866, 869 (8th Cir. 1983); see Strato v. Ashcroft, 388 F.3d 651, 654 (8th Cir. 2004) (standard of review is abuse of discretion). We deny the petitions and affirm the BIA's decisions.

## I.    BACKGROUND
### A.    Factual Summary

Jalloh was born and raised in the Kono district of Sierra Leone, and is a member of the Fula[2] tribe, a minority group in Sierra Leone. Jalloh claims his deceased father was a diamond businessman and member of the All People's Congress, a political party ruling Sierra Leone for 30 years, until the 1992 coup. Following the coup, Valentine Strasser (Strasser) ruled the country as a dictator until 1996. During Strasser's rule, Jalloh claims his father was imprisoned for six months.

In December 1992, Jalloh moved to Freetown, where he stayed with a family friend until late 1993, and then moved to Koidutown, where Jalloh claims he started working as a journalist for the *New Light Press* in October 1994. Jalloh contends his first story was published in March 1995, and immediately after his story was published, a military lieutenant came to the press office, and hit Jalloh's head with the butt of a gun, requiring Jalloh to get four stitches. Jalloh was then forced into a vehicle and taken with his hands tied and with a stick under his knees to an administrative court, where he was detained for eight hours. Months later, the same military lieutenant again confronted Jalloh in a bar, and on Jalloh's return home, an unidentified person riding inside a passing military vehicle shot Jalloh in the leg.

---

[2]Alternate spellings include "Fullah" and "Fulah."

Elections were held in February 1996, and Jalloh claims his brother was killed on election day. His sister, he claims, was brutally raped by military personnel in June and died a few days later. When the *New Light Press* wrote about his sister's ordeal along with another rape incident involving a diamond miner's wife, Jalloh claims he and his former professor, Sahr Sandi (Sandi), were arrested and imprisoned. Later, Jalloh and Sandi were separated, and Jalloh was told (falsely) Sandi had been killed while trying to escape. For nearly three weeks, Jalloh remained in prison, where he endured regular beatings and humiliation. Jalloh escaped from prison and emigrated to England, where he was told the Sierra Leone military had executed his father in place of Jalloh.

On December 7, 1996, Jalloh illegally entered the United States, using a United Kingdom passport he purchased, and sought political asylum. In his asylum application dated April 8, 1997, Jalloh alleged he had been persecuted because of (1) articles he had written for the *New Light Press* concerning atrocities committed by military personnel; (2) his membership in the Fula tribal group; and (3) his father's former association with the All People's Congress Party, as well as his father's alleged support of the rebels.

In July and August 1998, Jalloh's asylum hearings were conducted. Jalloh first asked to change his date of birth on his asylum application from May 20, 1965, to May 20, 1971, to match the date on the birth certificate he was submitting into evidence. Jalloh explained he gave an incorrect date of birth in his written affidavit because he was afraid that if he were returned to Sierra Leone, authorities would know who he was. By claiming a birth year of 1965, Jalloh believed he might escape detection and persecution. Jalloh then testified to the incidents outlined above. He also called three additional witnesses: Peter Andersen (Andersen), Ghandi Jalloh, and Professor Richard M'bayo (Professor M'bayo), none of whom could corroborate Jalloh's claim that he had worked as a journalist for the *New Light Press*.

-3-

**B.    Agency Decisions**

On August 19, 1998, the IJ denied Jalloh's applications for asylum and withholding of exclusion, finding both that Jalloh was not credible and that Jalloh failed to sustain his burden of proving his eligibility for asylum. The IJ based his adverse credibility finding on numerous discrepancies and inconsistencies among Jalloh's statements in his airport interview, asylum application, and hearing testimony. Moreover, the IJ related problems with Jalloh's evidence, as well as a lack of corroboration on material elements of his persecution claim. A forensic document analyst, Larry Zigler, opined the birth certificate submitted by Jalloh was fraudulent. The IJ recognized Jalloh presented no medical records substantiating his claim he had sustained a gunshot wound in 1995 (or his stitches). The IJ also noted multiple discrepancies between Jalloh's written statements and his testimony regarding his birth certificate, when he started school, whether he was released or escaped from prison, and his mother's cause of death. The IJ further noted significant discrepancies in facts relating to the *New Light Press*–its origination, initial publications, and whether Jalloh could have been, as he claimed, an original employee. Moreover, the IJ ruled Jalloh had not established his membership in the Fula minority group was the cause of any persecution directed toward him. The State Department reports did not discuss Fula group membership being a basis for persecution. Failing to establish the lower burden of proof required for asylum, the IJ ruled Jalloh also failed to satisfy the clear-probability standard of eligibility required for withholding of removal.

Jalloh filed a timely appeal with the BIA, which administratively closed the exclusion proceedings in June 2002, because Jalloh appeared eligible for Temporary Protected Status (TPS). The following October, the Department of Homeland Security (DHS) moved to reinstate proceedings. Jalloh did not respond to the motion, and the BIA reinstated proceedings.

In a decision issued on January 30, 2004, the BIA affirmed the IJ's decision. The BIA noted it generally defers to an IJ's adverse credibility findings when a

petitioner's discrepancies and inconsistencies, which are central to the claim, are identifiable from the record, the IJ provides cogent and specific reasons for an adverse credibility finding, and the petitioner has not presented a convincing explanation for the discrepancies and inconsistencies. In this case, the BIA found the discrepancies and inconsistencies were present in the actual record and were central to Jalloh's claim. The BIA further found Jalloh's explanations for the discrepancies and inconsistencies to be unconvincing.

Thereafter, Jalloh filed a motion to reopen the proceedings and presented multiple reasons for reopening his case. Jalloh claimed he subsequently married a woman from Sierra Leone who has been granted political asylum. Jalloh contends his spouse presented evidence against a cousin who had filed a citizenship application. Jalloh argued he feared retribution from the cousin's family based on his marriage. However, the BIA declared "fears of retribution are not considered on account of one of the five protected statutory grounds of race, religion, nationality, membership in a particular social group, or political opinion."

In his motion to reopen, Jalloh also claimed he fears his daughter, who is an American citizen, may be forced to undergo female genital mutilation (FGM) in Sierra Leone. In rejecting this claim, the BIA noted the record contained no evidence Jalloh's daughter would move to Sierra Leone or, if the daughter moved to Sierra Leone, she would face FGM over her parents' opposition to FGM. Moreover, the BIA noted speculations concerning what actions family members might take fail to meet the high standards necessary to grant a motion to reopen. Finding Jalloh had failed to provide sufficient reason either to reconsider its previous decision or to reopen the proceedings, the BIA denied the motion to reopen.

## II. DISCUSSION

### A. Asylum and Withholding Claims

To be eligible for asylum, Jalloh must prove either past persecution or a well-founded fear of future persecution on any of five protected grounds. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1); 8 C.F.R. § 208.13. To be entitled to withholding of removal, Jalloh must prove it is more likely than not that he would be persecuted if removed to Sierra Leone, a more stringent burden of proof. See 8 U.S.C. § 1231(b)(3); Yacoub v. INS, 999 F.2d 1296, 1298 (8th Cir. 1993).

We review denials of asylum for abuse of discretion, and underlying factual findings for substantial support by the record. Manivong v. Dist. Dir., U.S. Dep't of Justice INS, 164 F.3d 432, 433 (8th Cir. 1999). The IJ's factual determinations "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Tang v. INS, 223 F.3d 713, 718 (8th Cir. 2000) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citing 8 U.S.C. § 1105a(a)(4))). Reversal of the IJ's decision is warranted only if Jalloh shows the evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. See Elias-Zacarias, 502 U.S. at 481; Kratchmarov v. Heston, 172 F.3d 551, 554 (8th Cir. 1999). We will defer to the IJ's "credibility finding where the finding is supported by a specific, cogent reason for disbelief." Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (quotation omitted). "While minor inconsistencies and omissions will not support an adverse credibility determination, inconsistencies or omissions that relate to the basis of persecution are not minor but are at the heart of the asylum claim." Kondakova v. Ashcroft, 383 F.3d 792, 796 (8th Cir. 2004) (quotation omitted).

After carefully reviewing the record, we conclude the IJ provided sufficiently cogent and specific reasons to support his adverse credibility finding. The properly supported finding that critical elements of Jalloh's persecution claim were not credible provides substantial evidence supporting the IJ's ultimate determination that

Jalloh is not eligible for asylum or withholding of removal. See Kondakova, 383 F.3d at 796-98.

Significant discrepancies existed between Jalloh's airport statement and asylum application and his asylum hearing testimony. In his airport statement, Jalloh claimed he was born in 1965. However, Jalloh testified at his asylum hearing he was born in 1971, to match a birth certificate mailed from Sierra Leone. A forensic document analyst testified the proffered birth certificate was fraudulent. Additionally, in his airport statement, Jalloh claimed he had worked as a teacher. At the asylum hearing, Jalloh testified he had worked as a journalist for the *New Light Press*. Jalloh submitted no documentation corroborating his trade as a journalist, nor could any of his witnesses corroborate Jalloh's claim that he had worked for the *New Light Press* or for Sandi. Jalloh also submitted no medical documentation corroborating his gunshot wound or his stitches, nor demonstrated any scarring.

Jalloh's airport statement also failed to mention his alleged multiple arrests, beatings, gun shot wound, hospitalizations, and the murders of his immediate family members. Instead, Jalloh's airport statement mentioned only the theft of his car, his placement in and later release from a military barracks, the loss of his mother, and the unknown whereabouts of his family members. Given these material discrepancies and inconsistencies, we cannot conclude the BIA abused its discretion in affirming the IJ's adverse credibility finding and denying Jalloh's asylum and withholding claims.

### B. Motion to Reopen

In his motion to reopen, Jalloh asserted a new claim that he feared personal reprisals if deported to Sierra Leone because of his new marital relationship and because his daughter, who was born in the United States, would be forced to undergo FGM, even though both Jalloh and his wife opposed the procedure. "The Attorney General is accorded considerable discretion in deciding whether to reopen or

reconsider a case, and the court reviews the denial of a motion to reopen for abuse of discretion." Dominguez-Capistran v. Gonzales, 413 F.3d 808, 810 (8th Cir. 2005) (citing Nativi-Gomez v. Ashcroft, 344 F.3d 805, 807 (8th Cir. 2003)). We affirm the BIA's denial of a motion to reopen "if the movant[] ha[s] failed to establish a prima facie case for the substantive relief [he] seek[s] or if the movant[] ha[s] failed to introduce material evidence that was previously unavailable." Strato, 388 F.3d at 654.

The BIA denied Jalloh's motion to reopen because it found Jalloh had not met his "'heavy burden' of demonstrating that if his motion to reopen were granted, the new evidence presented would likely change the result in the case." Specifically, the BIA declared Jalloh's fears of retribution for his wife's involvement in providing evidence against her cousin's citizenship application are not "on account of one of the five protected statutory grounds of race, religion, nationality, membership in a particular social group, or political opinion." Moreover, the BIA determined the record did not support Jalloh's contentions that his United States-born daughter "would face FGM despite his and his wife's opposition to it." In particular, the BIA noted the proffered affidavits did not state the daughter would move to Sierra Leone; instead, "the affidavits state that 'if' the child returned and that the spouse, legally in the United States, 'would consider' returning to Sierra Leone." Such speculation, the BIA concluded, "hardly meets the high standard required to grant a motion to reopen."

We agree with the BIA's determination that Jalloh's reasons for reopening the proceedings fail to meet the requisite standard for granting such motions. See 8 C.F.R. § 1003.2(c)(1). Finding no abuse of discretion, we affirm the BIA's denial of the motion to reopen proceedings.

## III. CONCLUSION

We deny the petitions for review and affirm the BIA's decisions.

_____