# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-3387/05-1204

_____

| | | |
|---|---|---|
| Abdul Dahir Ibrahim, also known as Abdi-Basid Dahir Brava, | * * * | |
| Petitioner, | * * | |
| v. | * * * | Appeal from the Decision of the United States Board of Immigration Appeals. |
| Alberto Gonzales, Attorney General of the United States of America,[1] | * * * * | |
| Respondent. | * | |

_____

Submitted: November 18, 2005
Filed: January 23, 2006

_____

Before MURPHY, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Abdul Dahir Ibrahim, a native and citizen of Somalia, petitions for review of a final order of removal of the Board of Immigration Appeals ("BIA") affirming, without opinion, the decision of the immigration judge ("IJ") denying Ibrahim's

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is automatically substituted for his predecessor, John Ashcroft, as respondent.

application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Ibrahim also contends that his due process rights were violated by the IJ's denial of a continuance. For the reasons discussed below, we deny Ibrahim's petition.

## I.    BACKGROUND

Ibrahim entered the United States at the age of 14 in New York in 1989 in the company of one or more adults trusted by his family. His family remained in Somalia. He testified that his father sent him to the United States to improve his educational opportunities. Another trusted individual then took Ibrahim into Canada. Ibrahim filed an asylum application in Canada in which he now admits the bulk of the information was fabricated. He testified that the trusted individual told him what to write in the application. While in Canada, he attended high school under the false identity of Abdi-Basid Dahir Brava. His asylum application was denied in early 1993, and Ibrahim was deported back to the United States.

Soon after United States immigration officials released him from custody, Ibrahim reentered Canada and filed a new asylum application, identifying himself this time as Mohamed Abdi-Rahman, a member of the Darod clan. He was prosecuted for providing false testimony in connection with that asylum application and served three months in prison in St. Catharines, Ontario. He again was deported to the United States in late 1993, and United States immigration officials again released him from custody. Ibrahim testified that he made one more attempt to re-enter Canada in 1996 using the Abdi-Basid Dahir Brava identity, but he was turned away at the border.

Ibrahim ultimately traveled to California and filed an application for asylum in the United States in 1998. In that application, he claimed that he first had entered the United States at San Ysidro, California in 1997 and that he had lived in Ethiopia from 1991 through 1997. He listed a spouse and five children. In the attached declaration,

Ibrahim related in detail an incident wherein members of the United Somali Congress ("USC") killed his father and brother and raped his sister at his home in Mogadishu in 1991 while Ibrahim hid in another room. Ibrahim claimed that this persecution stemmed from his family's status as members of the Midgan clan.

In January 2001, the Immigration and Naturalization Service ("INS") served Ibrahim with an amended Notice to Appear, charging him as removable under section 237(a)(1)(A) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), due to inadmissibility under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who had sought a benefit under the INA by fraud or willful misrepresentation of a material fact. Ibrahim conceded removability and filed a new asylum application, alleging errors in his previous application. The story in his 2001 asylum application changed significantly from that in his 1998 application.

At a hearing before the IJ in April 2003, Ibrahim presented two witnesses to establish his identity. Each witness testified that he had known Ibrahim and his family in Mogadishu, and each believed Ibrahim's family to be of the Midgan clan. One witness left Somalia in 1986 and the other in 1996. Neither witness presented any first-hand knowledge regarding persecution of Ibrahim's family or other Midgans.

Ibrahim then testified, consistent with his 2001 asylum application, about his entry at New York in 1989 and his attempts to gain asylum in Canada, as described above. Contrary to the information he presented in his 1998 asylum application, Ibrahim stated that he learned of his father's 1991 death at the hands of the USC via a telephone call from an uncle in Nairobi, Kenya in 1997. The uncle also informed him that his sister had been raped by the USC in 1991 and that his mother was last seen in a refugee camp near Nairobi. Ibrahim testified that he fears returning to Somalia because, as a member of the Midgan clan, he would be subject to persecution at the hands of various warlords.

On cross-examination, Ibrahim admitted that the spouse and five children he listed in the 1998 application were actually his sister and her children. He also acknowledged that he omitted his Canadian conviction in that application. Ibrahim initially testified to having no Minnesota driver's license and no arrests in the United States. After more questioning, he admitted to an arrest in Minnesota in 2001 for driving with a suspended license and giving a false name to police. From this testimony, the IJ elicited an admission that Ibrahim did, in fact, have a Minnesota driver's license issued under the name Abdi-Basid Dahir Brava in 1999. Ibrahim testified that he had that license with him at the time of his 2001 arrest but chose not to give it to police, opting instead to use the name of a friend. Ibrahim had not previously disclosed this arrest during his asylum application process.

The IJ noted that the current State Department country report for Somalia cited continuing discord and human rights abuses in the southern part of the country. However, the country report showed continuing stability in the Republic of Somaliland, a region in the northwest of Somalia that is essentially independent from Somalia, although not internationally recognized as a sovereign state in its own right. The IJ noted that Ibrahim hailed from Hargeisa, the capital of the Republic of Somaliland region.

The IJ found Ibrahim removable and denied his application for asylum. The IJ found that Ibrahim failed to prove a well-founded fear of persecution due primarily to Ibrahim's complete lack of credibility. Alternatively, the IJ denied asylum in the exercise of his discretion. The IJ also found that Ibrahim failed to meet the higher burden of proof for withholding of removal and did not establish the more-likely-than-not probability of torture needed for relief under the CAT. The BIA summarily affirmed. Ibrahim filed a motion to reconsider at the BIA, arguing that his case did not fit the regulatory requirements for the "affirmance without opinion" procedure.

The BIA denied the motion to reconsider.[2] Ibrahim timely petitions this Court for review of the agency's decision to deny relief.

## II.    DISCUSSION

Because the BIA affirmed without opinion, we review the IJ's decision as the final determination of the agency. *Dominguez v. Ashcroft*, 336 F.3d 678, 679 n.1 (8th Cir. 2003). We defer to the IJ's findings of fact and disposition of the case unless the record evidence is "'so compelling that no reasonable factfinder could fail to find' [the petitioner] eligible for asylum, withholding of deportation, or relief under the Convention Against Torture." *Habtemicael v. Ashcroft*, 370 F.3d 774, 779 (8th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)); *see also* 8 U.S.C. § 1252(b)(4)(B). In other words, we must affirm the IJ's decision if it is supported by substantial evidence in the record. *Jalloh v. Gonzalez*, 423 F.3d 894, 898 (8th Cir. 2005). We defer to the IJ's findings regarding the petitioner's credibility if those findings are supported by specific, cogent reasons. *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005).

Under the INA, the Attorney General has discretion to grant asylum to an alien who proves past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Falaja*, 418 F.3d at 894; *see* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1); 8 C.F.R. § 208.13. Ibrahim acknowledges that he suffered no past persecution. He argues,

---

[2]On appeal, Ibrahim renews his argument that the BIA erred in deciding to apply the "affirmance without opinion" procedure to his case. *See* 8 C.F.R. § 1003.1(e)(4). We cannot consider this issue, except possibly in cases where there is an intervening legal development (which Ibrahim does not allege in this case), because "the determination whether the BIA properly employed its streamlined 'affirmance without opinion' procedure with respect to [petitioner's] claims is committed to agency discretion by law." *Ngure v. Ashcroft*, 367 F.3d 975, 979, 988 (8th Cir. 2004).

however, that he proved a well-founded fear of future persecution based on his membership in the Midgan clan. In particular, Ibrahim challenges the IJ's reliance on Ibrahim's previous falsified asylum applications for the negative credibility finding. Ibrahim claims the record compels a finding that he was just a youth guided to tell lies by adults he trusted.

We find that the IJ's negative credibility finding is supported by substantial evidence in the record. The IJ gave specific, cogent reasons for his negative credibility finding, relying on episodes of untruthfulness that occurred well after Ibrahim reached adulthood. The IJ noted that Ibrahim had a chance to "start fresh" with his 1998 United States asylum application but chose instead to present a fabricated story. According to Ibrahim's own testimony and photocopied birth certificate, he was 23 years old at that time. In addition, the IJ found it "significant that even as late as November 2001, [Ibrahim] was still trying to use the Abdi-Basid Dahir Brava identity for driver's license purposes." Ibrahim was 26 years old when that episode occurred.

Ibrahim also contends that the IJ did not give sufficient weight to the testimony of Ibrahim's two supporting witnesses. The IJ found that those witnesses testified credibly to knowing Ibrahim's family in Somalia when Ibrahim was a child. However, the witnesses presented no evidence to support Ibrahim's story of his family's persecution and no evidence in general to suggest Ibrahim has a well-founded fear of future persecution in Somalia due to his membership in the Midgan clan. Giving all due weight to the testimony of the two supporting witnesses, the record as a whole does not compel a finding that Ibrahim has a well-founded fear of future persecution.

We also find that the IJ's alternative holding to deny asylum in the exercise of his discretion was not an abuse of that discretion. An alien's history of submitting

falsehoods to immigration and law enforcement officers is a valid consideration in the Attorney General's exercise of discretion under the INA. *See, e.g.*, *Farbakhsh v. INS*, 20 F.3d 877, 881 n.3 (8th Cir. 1994) (listing immigration fraud among the factors to be considered in determining whether asylum should be granted as a matter of discretion).

To be eligible for withholding of removal under 8 U.S.C. § 1231(b)(3), the alien must show a clear probability that he will face persecution in the proposed country of removal. *Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 840 (8th Cir. 2004). Because we hold that Ibrahim did not establish the well-founded fear of future persecution necessary to prove his asylum claim, we also hold that he failed to meet the higher burden of proof required for obtaining withholding of removal. *Falaja*, 418 F.3d at 897.

Next, we affirm the IJ's denial of relief under the CAT. "An alien is eligible for relief under the CAT if he shows 'it is more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" *Sheikh v. Gonzales*, 427 F.3d 1077, 1082 (8th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). Ibrahim argues that the IJ failed to consider his CAT claim independently. It is true that "the IJ's adverse credibility determination and adverse decisions on asylum and withholding of removal are not determinative of a CAT claim." *Sheikh*, 427 F.3d at 1082. However, an independent analysis of a CAT claim is required only where there is evidence that the alien would face torture for reasons unrelated to the claims for asylum and withholding of removal. *Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005). In this case, Ibrahim relied on the same evidence to prove a likelihood of torture as he relied on to prove a likelihood of persecution. Therefore, the IJ's adverse findings regarding Ibrahim's credibility and the strength of Ibrahim's evidence for asylum and withholding of removal are relevant to Ibrahim's CAT claim as well. There is substantial support in the record for the IJ's finding that Ibrahim failed to

"establish that it is more likely than not that he would be tortured if removed to Somalia."

Finally, Ibrahim contends that his due process rights were violated when the IJ refused a continuance to allow Ibrahim to procure an official birth certificate and a documented statement from his uncle. "The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process." *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003). "To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." *Id.*

We find no fundamental procedural error here because Ibrahim did not show good cause why he could not have obtained an official birth certificate and statement from his uncle in time for the hearing. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). A photocopy of the birth certificate was in the record and was not disputed. Ibrahim first claimed his uncle had told him of the persecution of his family in his January 2001 asylum application; the hearing took place in April 2003. The IJ expressed frustration that no documented statement from the uncle was available and noted that Ibrahim had been "represented for years." Given these circumstances, it was not a fundamental procedural error to deny the request for a continuance.

In addition, "[t]o prove prejudice, an alien must show that the outcome of the proceedings may well have been different had the due process violation not occurred." *Ismail*, 396 F.3d at 975. Even if it were error to deny the continuance, Ibrahim has not shown any likelihood that the outcome of the proceedings would have been different. A photocopy of the birth certificate was already in the record. With regard to the statement from the uncle, Ibrahim had claimed in his 1998 asylum application that he, Ibrahim, was present in Somalia in 1991 for his father's and brother's deaths and his

sister's rape. He had made no mention of these events in his two earlier Canadian asylum applications. In January 2001, when Ibrahim was made aware that the INS had records showing he was already in North America in 1989, he filed a new asylum application claiming that his uncle had informed him of the 1991 events by telephone in 1997. Given the weight of evidence recited by the IJ to support his finding that Ibrahim completely lacked credibility, we do not think that a document from the uncle attempting to bolster Ibrahim's most recent version of events, procured six years after the alleged phone call and over two years after the claim was made, would have altered that credibility finding. Because Ibrahim can demonstrate neither a fundamental procedural error nor prejudice, we hold that his due process rights were not violated by the denial of a continuance.

## III.   CONCLUSION

We conclude that the IJ did not err in denying Ibrahim's application for asylum, withholding of removal, and relief under the CAT, nor in denying Ibrahim's request for a continuance. Therefore, we deny Ibrahim's petition for judicial review.

_____