# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2420

_____

Berhane Kifle Gebresadik,             *
                                      *
            Petitioner,               *
                                      *    Petition for Review of an Order
    v.                                *    of the Board of Immigration Appeals.
                                      *
Alberto Gonzales, Attorney General    *
of the United States of America,      *
                                      *
            Respondent.               *

_____

Submitted:   March 16, 2007
    Filed:   June 21, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Berhane Gebresadik petitions for review of an order of the Board of Immigration Appeals (BIA) affirming an Immigration Judge's (IJ) denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition.

# I.

Gebresadik, a native and citizen of Ethiopia, was born to an ethnic Amhara father and an Eritrean mother. She entered the United States as a non-immigrant visitor in March 2000. She remained beyond her authorized stay, and removal proceedings were commenced against her in May 2001. Gebresadik conceded that she was removable, but applied for asylum, withholding of removal, and protection under CAT.

Gebresadik's application was largely based on her claim that she was persecuted by individuals affiliated with the Ethiopian People's Revolutionary Democratic Front (EPRDF) because of her involvement in the All Amhara People's Organization (AAPO), a group she joined on April 16, 1992, so that she could help oppose the persecution of the Amhara people and promote a united Ethiopia. According to Gebresadik's application and testimony, she served as an organizer of a 200-person AAPO demonstration the day she joined. She also helped collect money and distribute leaflets for the organization. Gebresadik stated that because of her involvement with the AAPO, two EPRDF security agents entered her home on April 25, 1992, arrested her, and took her to jail, where she was tortured and interrogated. The agents reportedly claimed that the donations gathered on April 16, 1992, were used to buy weapons for anti-government activities and demanded that Gebresadik identify other activists. Gebresadik further asserted that on April 30, 1992, two gunmen, who identified themselves as members of "Harnet Tigray" (the freedom fighters of the Tigray people), entered her cell, blindfolded her, and shouted that she was an informant for the AAPO who had betrayed her Eritrean heritage. She said that one of these men then tore her clothes, raped her, and spit on her. Gebresadik also testified that her interrogators accused her of performing intelligence work for Eritreans.

According to Gebresadik, she was eventually released from jail on September 15, 1992. She stayed away from all AAPO functions and members thereafter, and the incident was never reported to the AAPO. She left Ethiopia in December 1992 and went to Egypt, where she worked as a servant until her arrival in the United States. Despite Gebresadik's absence from Ethiopia, her father, who remained in Ethiopia, reported that men have continued to come to his home looking for her.

Gebresadik also asserted in her application and testimony that she believed she would face persecution due to her Eritrean heritage if she were to return to Ethiopia. She reported that relations between Ethiopia and Eritrea deteriorated after she left Ethiopia and that Ethiopians of Eritrean origin were being arrested and deported to Eritrea. Individuals that she alleged had been deported to Eritrea included her mother, who reportedly died shortly after being deported, and Habtemickeal Asnakie, the father of her two children. Gebresadik's father feared that because of Gebresadik's Eritrean heritage, she would also be deported if she returned to Ethiopia.

Attached to Gebresadik's application were various documents, one of which was an October 2002 letter from Wondayehu Kassa, the AAPO representative from North America, whom Gebresadik said she had met during the demonstration in 1992. The letter stated that Gebresadik had been subjected to mistreatment and injustices at the hands of EPRDF agents, but did not mention her arrest. Another document was an affidavit from an individual who reportedly knew Gebresadik in Ethiopia. The affidavit recounted the same information listed in Gebresadik's affidavit regarding her AAPO involvement and arrest. Gebresadik also submitted a copy of her passport, birth certificate, and various reports and articles that contained country information for Ethiopia and Eritrea.

On December 23, 2002, the IJ denied Gebresadik's application. In his decision, the IJ questioned Gebresadik's credibility and the plausibility of her claims. The IJ noted that Gebresadik had initially testified at the hearing that her AAPO involvement

-3-

and subsequent arrest took place in March of 1992, but then corrected it to reflect that it had occurred in April. The IJ also stated that Ethiopia and Eritrea were allies in 1992 and that he therefore did not "understand why the respondent would be questioned as to being involved with Eritrean intelligence at that time." He further thought it "seem[ed] a bit implausible . . . that a person would be given a position of authority, in organizing a demonstration on the very same day the person joined the political organization," and that it was "just not plausible . . . that Ethiopian authorities would still be looking for the respondent 10 years after her brief period of AAPO involvement." The IJ also commented on the insufficient corroborating evidence supplied by Gebresadik. He noted that she provided no contemporaneous objective documentation of her joining the AAPO, and he also discounted the value of the letter from the AAPO representative because it did not mention anything about her being arrested and because Gebresadik had testified that she never told the AAPO of the events when they occurred. In addition, the IJ commented that "the evidence regarding respondent's connections to Eritrea are (sic) quite limited." For these reasons, the IJ ultimately concluded that Gebresadik had not met her burden of proof.

The BIA eventually remanded the case to the IJ.[1] On remand, Gebresadik was permitted to submit additional evidence, and another hearing was held. During this process, Gebresadik asserted that she had suffered not just one but five sexual assaults during her time in prison. Most of the other evidence presented by Gebresadik was the same as that provided in her original application. The IJ once again denied Gebresadik's application, specifically incorporating its prior decision and also noting

---

[1]The BIA had initially affirmed the IJ's decision, concluding that even if Gebresadik's testimony was deemed credible and even if she had established past persecution, her claim would fail because there had been a fundamental change in circumstances and internal relocation was appropriate. After a reconsideration of the decision pursuant to Gebresadik's motion, however, the BIA concluded that it had misinterpreted a Department of State Report that it relied on in its initial affirmance and remanded the case to the IJ.

that Gebresadik had "really not offered any new evidence to support her claim" or "offered any corroborating evidence going to her AAPO activities, or to her Eritrean ethnicity." The BIA affirmed the IJ's decision.

## II.

Gebresadik contends that the IJ and BIA erred in denying her application for asylum, withholding of removal, and protection under CAT. "We review the IJ's decision directly where, as here, the BIA adopts and affirms it," Aziz v. Gonzales, 478 F.3d 854, 857 (8th Cir. 2007), and will "defer to the IJ's findings of fact and disposition of the case unless the record evidence is 'so compelling that no reasonable factfinder could fail to find [the petitioner] eligible for asylum, withholding of deportation, or relief under the Convention Against Torture.'" Onsongo v. Gonzales, 457 F.3d 849, 852 (8th Cir. 2006) (alteration in original) (quoting Habtemicael v. Ashcroft, 370 F.3d 774, 779 (8th Cir. 2004)).

### A.

To be eligible for asylum, a petitioner must show that he or she is a refugee – a person "who is unable or unwilling to return to his country of nationality 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Berte v. Ashcroft, 396 F.3d 993, 996 (8th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish a well-founded fear of future persecution, the fear must be "both subjectively genuine and objectively reasonable." Eta-Ndu v. Gonzales, 411 F.3d 977, 983 (8th Cir. 2005). A petitioner who is able to establish past persecution is "entitled to a presumption of a well-founded fear of future persecution, which can be rebutted by evidence that country conditions have changed." Lengkong v. Gonzales, 478 F.3d 859, 862 (8th Cir. 2007).

-5-

As recounted above, Gebresadik's claims of past and future persecution were discounted by the IJ because he questioned her credibility and because of the lack of corroborating evidence. We will uphold an IJ's adverse credibility determinations as long as "they are supported by specific, cogent reasons for disbelief." Celaj v. Gonzales, 468 F.3d 1094, 1097 (8th Cir. 2006). Further, "[o]ur court has held that an IJ may properly base a credibility finding on the 'implausibility' of an alien's testimony, as long as the IJ gives specific and convincing reasons for disbelief." Mamana v. Gonzales, 436 F.3d 966, 968 (8th Cir. 2006). "[A]n IJ's adverse credibility findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting Turay v. Ashcroft, 405 F.3d 663, 668 (8th Cir. 2005)).

After reviewing the record, we are satisfied that the IJ gave satisfactory reasons for questioning Gebresadik's credibility, particularly as it pertains to her claim of past persecution. We agree with the IJ's assertion that it is implausible for the AAPO to have given Gebresadik the authority to organize a 200-person AAPO demonstration on the very day she joined the organization. Moreover, despite the fact that the IJ expressed disbelief on this matter in his initial decision, Gebresadik offered no evidence on reconsideration that would tend to diminish the implausibility of her contention. In addition, and despite Gebresadik's assertion to the contrary, it was not unreasonable for the IJ to question Gebresadik's credibility based on her claim that she had been accused during her detention of being an Eritrean spy, as the country reports included in Gebresadik's application showed that the controlling governments

-6-

of Ethiopia and Eritrea were in cooperation in 1992.[2]  We consequently cannot say that it was unreasonable for the IJ to question Gebresadik's credibility.[3]

We also cannot say that it was unreasonable for the IJ to state that the lack of corroborating evidence is detrimental to Gebresadik's claim of past persecution.  As we have noted, the "lack of corroboration . . . combined with other credibility issues, can provide support for an adverse credibility finding."  Onsongo, 457 F.3d at 855.  Gebresadik did not provide any contemporaneous objective documentation regarding her joining the AAPO.  In addition, the IJ found the AAPO letter from Kassa to have little value because it did not mention her arrest and because Gebresadik had testified that she had met Kassa only once, on April 16, 1992, and had not seen him since.[4]  The only other piece of corroborating evidence that Gebresadik provided regarding her AAPO membership or her arrest was an affidavit from an Ethiopian acquaintance.

[2]The reports reveal that in 1992 Ethiopia and Eritrea were still one country and that the EPRDF and the Eritrean People's Liberation Front (EPLF) had just recently ousted former President Mengistu's regime.  A.R. 1320, 1391, and 1548.  These reports also show that in 1992 the EPRDF, which headed the Transitional Government of Ethiopia, was sympathetic to Eritrean independence and accepted the EPLF as the provisional government of Ethiopia.  Id.

[3]Gebresadik additionally asserts that it was erroneous for the IJ to question her credibility based on her initial misstatement of the month of her AAPO involvement and arrest at her first IJ hearing.  After a review of the transcript, we agree with Gebresadik that this appears to have been a simple misstatement and does not necessarily support an adverse credibility determination.  In any event, this does not appear to have been an essential factor in the IJ's determination, and we are satisfied that the other credibility issues addressed by the IJ are sufficient to support his credibility assessments.

[4]The IJ noted that while the AAPO letter did state that Gebresadik was a victim of mistreatment and injustice at the hands of EPRDF Security agents, this information must have been provided to the AAPO representative by Gebresadik in 2002 because she stated that she had not told the AAPO of these events.

The IJ found the corroborating evidence to be insufficient in this case, and we cannot say that the record compels a contrary finding. The IJ also noted that Gebresadik had failed to offer additional corroborating evidence regarding her AAPO activities or detention during her remand proceeding. While we recognize that "petitioners cannot be expected to get substantial documentation from their persecutors," Ombongi v. Gonzales, 417 F.3d 823, 826 (8th Cir. 2005), we believe that the lack of corroboration here, combined with the credibility issues discussed above, provides a reasonable basis for undermining the credibility of Gebresadik's claim of past persecution.[5]

We also believe that it was reasonable for the IJ to discount Gebresadik's claims of future persecution, especially in light of the credibility concerns addressed above. In regard to future persecution based on AAPO membership, the IJ found it implausible that Ethiopian authorities would still be interested in her, because it had been more than ten years since her brief involvement with the AAPO, she had not been politically active since her detention, and she had been given an exit visa to leave Ethiopia. In regard to future persecution based on her Eritrean heritage, the IJ noted that the evidence was rather limited. We cannot conclude that the record compels a contrary conclusion.

---

[5]We reject Gebresadik's argument that the IJ wrongly excluded her alleged physical evidence of torture. At her March 30, 2005, evidentiary hearing, Gebresadik attempted to disrobe and show the IJ a scar that she claimed to have received during her detention in Ethiopia. The IJ prevented her from doing so. This decision was not erroneous, particularly in light of the fact that Gebresadik was permitted to testify about the scar. At the same hearing, Gebresadik also attempted to obtain a continuance to procure expert testimony regarding her scar. This request was also denied by the IJ. As we have previously recognized, we have "no jurisdiction to review an IJ's purely discretionary decision to deny a continuance of a removal hearing, unless that ruling resulted in such procedural unfairness as to implicate due process," Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005), *cert. denied,* 126 S. Ct. 1793 (2006), which Gebresadik does not allege here.

After considering the record as a whole, we conclude that there was sufficient evidence to support the IJ's conclusion that because Gebresadik failed to meet her burden of proof, she is not eligible for asylum.[6]

B.

Because Gebresadik has failed to meet the standard for asylum, she also fails to meet the more rigorous standard for withholding of removal. See Turay, 405 F.3d at 667. Furthermore, the conclusions that support a denial of Gebresadik's asylum and withholding of removal claims also support the denial of her CAT claims. See Ming Ming Wijono v. Gonzales, 439 F.3d 868, 874 (8th Cir. 2006).

The petition for relief is denied.

_____

[6]At oral argument, Gebresadik asserted that on remand the IJ should have performed an analysis regarding her ability to relocate internally. Because this argument was raised for the first time at oral argument and was not briefed, it is waived. See Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 602 n.1 (8th Cir. 2007).