# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3895

_____

| | | |
|---|---|---|
| Irene Clemente-Giron, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review from the |
| v. | * | Board of Immigration Appeals. |
| | * | |
| Eric H. Holder, Jr.,[1]  Attorney | * | |
| General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 26, 2008
Filed: February 10, 2009

_____

Before WOLLMAN, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Irene Clemente-Giron petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under Article 3 of the Convention Against Torture ("CAT").  For the reasons discussed below, we deny Clemente-Giron's petition.

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

## I.    BACKGROUND

Clemente-Giron entered the United States from El Salvador on June 7, 2001, as a visitor with authorization to remain until December 7, 2001. She filed an asylum application on January 8, 2002. In the application, Clemente-Giron claimed that El Salvadoran police persecuted her because of her religious beliefs and political opinions. She explained that she worked as a counselor for the Ministerio Liberacion, a group whose mission was to teach convicted criminals, gang members, and similar groups about the Bible. According to Clemente-Giron's application, in May 2001, police officers stopped her and others, pointed guns at the group, ordered them to put up their hands, and searched them. After Clemente-Giron told the police that she was a counselor with the Ministerio Liberacion, the police pulled her aside, interrogated her and threatened to put her in jail if they saw her again. Clemente-Giron also stated in the application that she was afraid of being tortured and raped if she ever returned to El Salvador. The application contained no mention of any other incidents of persecution suffered by Clemente-Giron.

On November 17, 2003, an asylum officer interviewed Clemente-Giron. During the interview, Clemente-Giron described an incident that occurred in April 2000. She claimed that she was praying in her home when police officers burst in and arrested everyone present. The police verbally insulted her but did not physically harm her. Shortly after this incident, Clemente-Giron visited the United States for four months. When she returned to El Salvador, she moved to a city fifty miles away from her previous home. Clemente-Giron stated that the situation was better in her new city, but on one evening in May 2001, some men, whom she believed were police officers in plain clothes, grabbed her Bible and hit her with it. Clemente-Giron explained that she knew the men were police officers, despite the fact that they were not wearing uniforms, because police officers do not wear uniforms when they "hurt

someone." The asylum officer found Clemente-Giron ineligible for asylum because she was "not credible due to internal inconsistencies, inconsistencies with her [asylum application], and vague testimony lacking an appropriate level of detail."

After meeting with the asylum officer but prior to her hearing before the IJ, Clemente-Giron retained counsel. With her counsel's assistance, Clemente-Giron filed an affidavit in support of her asylum application. In this affidavit, Clemente-Giron detailed two additional incidents. The first occurred in 1997 or 1998. After a church meeting in her house, three men carrying guns, whom she believed were police officers in plain clothes, warned her and her daughter to stop talking to people about the Bible. The second incident occurred in 1999, when three uniformed police officers covered her mouth and eyes, threatened her, and told her to stop doing spiritual work. The affidavit did not mention the April 2000 incident that Clemente-Giron had discussed in her asylum interview.

The affidavit did, however, discuss the May 2001 incident. Clemente-Giron claimed that she and four others from her church group were praying with gang members in the middle of a soccer field when uniformed police officers arrived. The others ran away, but Clemente-Giron could not run. The policemen pointed guns at her and interrogated her. Clemente-Giron explained to them that she was part of the Ministerio Liberacion, which she believes led the police to assume that she was a revolutionary. She stated that the policemen then raped her repeatedly. The affidavit also recounted that Clemente-Giron did not report the incident to anyone and that it is extremely difficult for her to discuss the events of that night.

At Clemente-Giron's hearing, the IJ questioned her about why she had not previously presented allegations about the rape and the other instances of persecution. Clemente-Giron explained that she was ashamed but that she felt safer now. The IJ concluded that Clemente-Giron was not credible. He found that there were "very significant discrepancies" in Clemente-Giron's claims, including the fact that she

referenced an additional incident of persecution at each successive step of the asylum process. Moreover, the IJ noted that Clemente-Giron did not mention the sexual assault until her affidavit was filed and that she was inconsistent in describing other details about the event. Because the IJ found that Clemente-Giron's explanation for these inconsistencies was not credible, he concluded that corroboration was needed. Clemente-Giron provided no corroboration, so the IJ denied her claims for asylum, withholding of removal, and protection under the CAT.

Clemente-Giron appealed the IJ's decision to the BIA, which found that the IJ's credibility determination was supported by the record. The BIA noted the inconsistencies between Clemente-Giron's application, her interview and her testimony, as well as her failure to provide corroborating evidence of her claims that she was involved with the Ministerio Liberacion and that she was mistreated by the police. The BIA found that the inconsistencies were central to Clemente-Giron's claim and that she failed to provide a convincing explanation for the discrepancies. Accordingly, the BIA dismissed the appeal and granted Clemente-Giron sixty days to voluntarily depart from the United States. After Clemente-Giron petitioned for review, we granted her motion for a stay of removal pending our decision on her petition.

## II.    DISCUSSION

"When the BIA adopts and affirms the IJ's decision, but also adds reasoning of its own, we will review both decisions together." *Chen v. Mukasey*, 510 F.3d 797, 800 (8th Cir. 2007). We affirm the decisions if they are supported by substantial evidence, and we "will not disturb [the IJ's] findings of fact 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007) (internal citation omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)).

A person seeking asylum must show that she is "unable or unwilling to return to . . . [her home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 U.S.C. § 1158(b)(1). A person seeking withholding of removal "must demonstrate a 'clear probability' that 'his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ezeagwu v. Mukasey*, 537 F.3d 836, 839 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(b)). An applicant seeking relief under the CAT must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

"The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a). "A credibility determination is a finding of fact, and we should accept adverse credibility findings 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Redd v. Mukasey*, 535 F.3d 838, 842 (8th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). Moreover, "[w]hile minor inconsistencies and omissions will not support an adverse credibility determination, inconsistencies or omissions that relate to the basis of persecution are not minor but are at the heart of the asylum claim." *Onsongo v. Gonzales*, 457 F.3d 849, 853 (8th Cir. 2006).[2] When the applicant's testimony is inconsistent, an IJ is entitled to require corroborating evidence. *Esaka v. Ashcroft*, 397 F.3d 1105, 1110 (8th Cir. 2005). "The combination of an adverse credibility finding and a lack of corroborating evidence for the claim of persecution

---

[2]The REAL ID Act of 2005 includes a specific provision governing credibility determinations. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (providing that, for asylum applications submitted after May 11, 2005, credibility determinations may be made "without regard to whether an inconsistency . . . goes to the heart of the applicant's claim"). Clemente-Giron filed her application for asylum on January 8, 2002; therefore, we use the pre-REAL ID Act standard as stated in *Onsongo*.

means that the applicant's claim fails, regardless of the reason for the alleged persecution." *Redd*, 535 F.3d at 842.

Because an applicant seeking withholding of removal faces a higher burden than an applicant seeking asylum, the failure to establish eligibility for asylum also means the applicant fails to establish eligibility for withholding of removal. *Ibrahim v. Gonzales*, 434 F.3d 1074, 1079 (8th Cir. 2006). If the applicant's CAT claim relies on the same evidence as her asylum and withholding of removal claims, the court's adverse decision on asylum and withholding of removal will also be determinative of the CAT claim. *Id.* at 1080.

Clemente-Giron argues that the IJ and BIA's credibility determination improperly relied upon her failure to disclose the rape in her asylum application and interview and focused on minor inconsistencies. She contends that the IJ and BIA, therefore, improperly required corroborating evidence of her claims without sufficiently evaluating her explanation that she was too ashamed to discuss the sexual assault until she filed her affidavit and testified before the IJ. We disagree. The IJ and BIA's adverse credibility finding is supported by numerous material inconsistencies that go to the heart of Clemente-Giron's asylum claim, even apart from her omission of the sexual assault.

Both the IJ and BIA noted that the number of incidents of past persecution that Clemente-Giron claims to have suffered changed with each step of the asylum application process. Clemente-Giron's asylum application referred to only one incident, police persecution in May 2001. In her asylum interview, Clemente-Giron added a second incident, an arrest in April 2000. Finally, in her affidavit and testimony before the IJ, Clemente-Giron omitted the April 2000 arrest but described two new incidents in addition to the May 2001 incident: police persecution in 1997 or 1998, and another instance of police persecution in 1999.

Furthermore, Clemente-Giron's descriptions of her one repeated claim, the May 2001 incident, were also inconsistent. In her asylum application, Clemente-Giron claimed that the police held her and a group of people at gunpoint and searched them. In her asylum interview, she stated only that the police took her Bible and hit her with it. In her affidavit, Clemente-Giron alleged, for the first time, that she was raped during this encounter. The affidavit also stated, contrary to Clemente-Giron's asylum application, that the people around her fled the area when they saw the police approaching. Additionally, Clemente-Giron stated in her asylum interview that she believed the men who hit her with her Bible were police officers despite the fact that they were not wearing their uniforms, explaining that police officers do not wear uniforms when they "hurt someone." In her affidavit and testimony, however, Clemente-Giron claimed that she identified the men as police officers because they were wearing uniforms.

These inconsistencies are not minor. Instead, they go to the heart of Clemente-Giron's asylum claim, which is predicated on her assertions that the police persecuted her because of her religious and political beliefs. Clemente-Giron's conflicting accounts of the number of times that police officers persecuted her relate directly to the basis of her claim of past persecution. *See Sheikh v. Gonzales*, 427 F.3d 1077, 1081 (8th Cir. 2005) (upholding an adverse credibility finding where the petitioner's asylum application omitted incidents that related to the asserted basis of persecution).

Moreover, because the May 2001 incident is central to her asylum claim, Clemente-Giron's inconsistent descriptions of that event also go the heart of her claim. *See Falaja v. Gonzales*, 418 F.3d 889, 895-96 (8th Cir. 2005) (finding that inconsistent details regarding a major instance of persecution support an adverse credibility finding). The conflicting details that Clemente-Giron offered about whether she was alone during the incident, whether the police officers held her at gunpoint or hit her with a Bible, whether the officers searched her and others, and

whether the men who attacked her were wearing police uniforms undermine her credibility.

Clemente-Giron offers several explanations for the inconsistencies. She first states that she could not bring herself to discuss the sexual assault until she felt safer. While "it is understandable that the female petitioner may have been reluctant to discuss such a degrading experience [as rape] if it occurred," *Singh*, 495 F.3d at 559, that does not explain the inconsistencies in other aspects of Clemente-Giron's story. Citing our decision in *Bellido v. Ashcroft*, 367 F.3d 840 (8th Cir. 2004), Clemente-Giron further claims that any inconsistent statements may be attributed to her confusion about the asylum process, her lack of education, and her unfamiliarity with English. In *Bellido*, however, the applicant's testimony was "consistent and believable" overall. *Id.* at 844. Although Bellido's asylum application omitted certain details about his arrest, when the application form "asked directly whether he had been arrested, detained, or interrogated, Bellido answered in the affirmative." *Id.* at 843. Additionally, unlike Clemente-Giron's testimony, Bellido's testimony was supported by corroborating evidence. *See id.* at 844. Moreover, even if Clemente-Giron's explanations for her inconsistent statements were plausible, "that fact does not compel the conclusion that the IJ erred in finding her testimony implausible." *Onsongo*, 457 F.3d at 854; *see also Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003) (holding that a reviewing court should not supersede the IJ's credibility finding simply because the petitioner's explanations could support an alternative finding). Based upon our review of the record, we conclude that substantial evidence supports the IJ and BIA's adverse credibility finding. *See Gemechu v. Ashcroft*, 387 F.3d 944, 948 (8th Cir. 2004).

In light of the discrepancies in Clemente-Giron's description of the number of incidents and the details of the May 2001 incident, the IJ was entitled to require corroborating evidence. *See Esaka*, 397 F.3d at 1110. We recognize that Clemente-Giron could not "be expected to get substantial documentation from [her]

persecutors." *Osonowo v. Mukasey*, 521 F.3d 922, 927 (8th Cir. 2008) (quoting *Gebresadik v. Gonzales*, 491 F.3d 846, 851 (8th Cir. 2007)).  As the IJ noted, however, Clemente-Giron failed to obtain even minimal corroboration of her other testimony.  For example, Clemente-Giron provided no objective evidence of her association with the Ministerio Liberacion, the organization that she claims caused the police to target her.  *See Gebresadik*, 491 F.3d at 850 (upholding an adverse credibility finding where the petitioner failed to provide corroborating evidence that she belonged to a persecuted political group).  Clemente-Giron also provided no corroborating evidence of her counseling work or of the other incidents of persecution.  Considering that the alleged incident of police harassment in 1997 or 1998 took place in Clemente-Giron's home, with her daughter present, the IJ found it "inexplicable . . . that [she did] not provide[] any sort of corroboration from her own daughter, with whom she apparently remains in contact."

We have held that an IJ is not compelled to accept testimony about sexual assault without corroboration in light of overall credibility problems. *Singh*, 495 F.3d at 559.  Accordingly, the lack of corroborating evidence, combined with discrepancies in Clemente-Giron's testimony, means that Clemente-Giron's asylum claim fails. *See Osonowo*, 521 F.3d at 928.

Because we find that the IJ and BIA did not err in denying Clemente-Giron's asylum claim, "we likewise find no error in the conclusion that [she] did not meet the more rigorous standard for withholding of removal." *See id*.  Clemente-Giron's CAT claim was based on the same evidence as her asylum and withholding of removal claims; therefore, the IJ and BIA's "adverse credibility finding is fatal to [that] claim . . . as well." *Aden v. Ashcroft*, 396 F.3d 966, 969 (8th Cir. 2005).

## III.  CONCLUSION

For the foregoing reasons, we deny Clemente-Giron's petition. Clemente-Giron moved for a stay of removal before her voluntary departure period expired; therefore, we deem the grant of her motion for a stay of removal to include a stay of her voluntary departure period.  *See Rife v. Ashcroft*, 374 F.3d 606, 616 (8th Cir. 2004).

WOLLMAN, Circuit Judge, dissenting.

Because I disagree with the premise that fear and shame resulting from sexual assault "fail[] to provide any convincing explanation" for a petitioner's reluctance to reveal her abuse, I respectfully dissent.  (J. App. at 3 (BIA Decision).)

We will uphold the denial of an asylum application if "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  Adverse credibility determinations must be supported by specific and cogent reasons for disbelief.  Eda-Ndu v. Gonzales, 411 F.3d 977, 982 (8th Cir. 2005).

The crux of the IJ and BIA's credibility determination was Clemente-Giron's failure to immediately disclose that she was repeatedly raped by six police officers in May 2001.  Without the discrepancies associated with this incident, the shortcomings in Clemente-Giron's petition are minor and do not go to the heart of her claim.  They are therefore insufficient to support an adverse credibility determination.  Onsongo v. Gonzales, 457 F.3d 849, 853 (8th Cir. 2006) (citing Jalloh v. Orders of the Bd. of Immigration Appeals, 423 F.3d 894, 898 (8th Cir. 2005).

The United Nations, the INS, and the Ninth and Seventh Circuits all recognize the impact sexual assault can have on a victim's ability to disclose her abuse and that

-10-

such reluctance should not weigh against credibility. According to the United Nations Guidelines on the Protection of Refugees, memory loss, persistent fear, self-blame, and difficulty in concentration are all symptoms exhibited by those who have been sexually assaulted. United Nations High Commissioner for Refugees, Guidelines on the Protection of Refugee Women, ¶ 72, (July 1991), at http://www.unhcr.org/publ/PUBL/3d4f915e4.pdf. These Guidelines also recognize the reluctance of women to disclose such abuse to male staff. Id. ¶ 47. Likewise, the INS has provided guidance to their asylum officers in dealing with the same issues concerning male interviewers and memory loss. Immigration and Naturalization Servs., Memorandum: Considerations for Asylum Officers Adjudicating Asylum Claims From Women, (May 26, 1995), at http://www.state.gov/s/l/65633.htm.

Here, Clemente-Giron relied on a man she did not know well to complete her initial asylum application on her behalf. Upon entering the United States, she spoke no English and had only a ninth grade education. She moved to Minnesota and joined a church, where she met a man named Jose who offered to assist her in her application for asylum. Jose appeared to speak English very well and together they completed her application in one night on December 20, 2001. Clemente-Giron did not have the assistance of counsel and was not informed about the asylum process or its requirements.

At her next opportunity to tell her story, Clemente-Giron was interviewed by a female asylum officer, but she spoke directly to a male translator. According to her affidavit, it was not until she retained counsel and developed a level of trust with her attorneys that she was able to share the heart of her asylum claim. At the hearing before the IJ, Clemente-Giron reluctantly repeated the details of the rapes, at one point asking the IJ if she must continue. She explained the delay in disclosure in her affidavit, saying "[e]ven today it is extremely difficult to recount the events of that night on the soccer field. . . . I have not spoken of these incidents to many people because it was so deeply personal and still affects me today." She noted that she did

not know Jose very well, and that even though he was helping her, she was ashamed and uncomfortable talking to him, "especially because he is a man." At no point was Clemente-Giron asked directly if she had been raped. Cf. Bellido v. Ashcroft, 367 F.3d 840, 843 (8th Cir. 2004) (noting favorably that although Bellido omitted details regarding his arrest on his application, he responded affirmatively "[w]hen the form asked directly whether he had been arrested.") This progression is consistent with the United Nations' and INS's expectations concerning a woman's ability to discuss prior sexual assault.

The Seventh and Ninth Circuits have confronted similar cases in which details of sexual assaults were omitted from an applicant's asylum application and, in some cases, not disclosed until the hearing before the IJ. The Ninth Circuit has held that a previous failure to disclose sexual abuse "cannot reasonably be characterized as an inconsistency." Paramasamy, 295 F.3d at 1053. "That a woman who has suffered sexual abuse at the hands of male officials does not spontaneously reveal the details of that abuse to a male interviewer does not constitute an inconsistency from which it could reasonably be inferred that she is lying." Id. The Seventh Circuit recognized the same principles in remanding a case in which the applicant did not disclose in her application that she had been raped, concluding that an adverse credibility finding should not be based on an applicant's "understandable reluctance to divulge information about her rapes." Juarez-Lopez v. Gonzales, 235 Fed. Appx. 361 (7th Cir. 2007) (citing Kebede, 366 F.3d at 811 and Paramasamy, 295 F.3d at 1053).

Although the IJ recognized his obligation to determine whether Clemente-Giron supplied a convincing explanation for her omissions, he did not acknowledge any more than her "attempt[] to explain the most serious incident . . . as relating to her reluctance to describe the incident." Moreover, the IJ relied exclusively on Kondakova v. Ashcroft, 383 F.3d 792 (8th Cir. 2004), for the proposition that inconsistencies between a respondent's testimony and the underlying asylum application may support an adverse credibility determination. Kondakova did not

involve a delayed allegation of sexual assault.  Further, the IJ failed to note that the applicants were highly educated, a fact that led the IJ in that case to conclude that they could "insure that the information in the application was complete and accurate."  Id. at 794-95.  The IJ must recognize the potential for mistakes and omissions due to education, language, and cultural barriers.  See  Bellido, 367 F.3d 843.

The remaining minor inconsistencies, though needing no explanation because they cannot form the basis of an adverse credibility determination, are easily understood in this context.  One does not have to speculate that Clemente-Giron was confused by this process.  The transcript of her hearing reveals her consistent confusion with questions.  During the hearing, she was asked if there had been any time during the hearing that she was asked a question that she did not understand.  She responded "[t]hat happens to me quite often."  Towards the end of the hearing, after cross-examination, she asked her lawyer to clarify whether the IJ or the government lawyer was the judge.  Whether Clemente-Giron's confusion was due to her education, translation errors, or some other reason is not clear.  The IJ did not appear to consider the cause behind her confusion, but rather focused solely on the inconsistencies it caused and ascribed an unsupported adverse motive to them.  See Heng v. Gonzales, 493 F.3d 46, 49 (1st Cir. 2007) (noting that errors in translation "cannot be avoided, but immigration judges must be sensitive to the complexities of receiving testimony through a translator and take into account these difficulties when assessing credibility") (quoting Giday v. Gonzales, 434 F.3d 543, 549 n.2 (7th Cir. 2006)) (internal quotations omitted).

Unlike the cases relied upon by the Attorney General, see Fofanah v. Gonzales, 447 F.3d 1037 (8th Cir. 2006); Onsongo, 457 F.3d 849; Bropleh v. Gonzales, 428 F.3d 772 (8th Cir. 2005); Esaka v. Ashcroft, 397 F.3d 1105 (8th Cir. 2005); Sheikh v. Gonzales, 427 F.3d 1077 (8th Cir. 2005); Nyama v. Ashcroft, 357 F.3d 812 (8th Cir. 2004); Mitondo v. Mukasey, 523 F.3d 784 (7th Cir. 2008); Balogun v. Ashcroft, 374 F.3d 492 (7th Cir. 2004), the record here is devoid of any evidence of a

"calculated attempt[] to mislead." Balogun, 374 F.3d at 504. The relied-upon cases only lend credence to the notion that "[m]inor discrepancies . . . [that] cannot be viewed as attempts by the applicant to enhance her claims of persecution have no bearing on credibility." Kebede v. Ashcroft, 366 F.3d 808, 811 (9th Cir. 2004) (quoting Damaize-Job v. INS, 787 F.2d 1332, 1337 (9th Cir. 1986)) (internal quotations omitted). In contrast, Clemente-Giron admitted when she could not remember a name or fact, and her inconsistencies are largely explained by the brutal and humiliating sexual assault that she alleges occurred at the hands of Salvadoran authorities.

For this reason, reliance on Singh v. Gonzales, 495 F.3d 553 (8th Cir. 2007), for the proposition that an IJ is not compelled to accept testimony about a rape without corroboration in light of the overall credibility finding is misplaced. The credibility finding at issue in Singh also involved calculated attempts to mislead. Singh and his family provided "implausible testimony about their living arrangements in the United States," 495 F.3d at 558, including that they lived with strangers for two years in California, rent-free, yet were unable to describe the location or names of highways in their own city. Id. Their second child was born in Missouri during this period, and the IJ noted that Singh became agitated when asked about the family's time in California. Id. We found the IJ's conclusion that Singh was forum shopping to be reasonable. Id. Additionally, Singh and his wife appeared to offer contradictory testimony regarding whether key events were sparked by government abuse. Id. We concluded that in light of these problems, the IJ was not compelled to accept Singh's allegations of government abuse that included the alleged rape of his wife by Indian police. Id. at 559.

Singh involved a myriad of deception, only one part of which was an inconsistent allegation of rape. The case before us presents only one significant inconsistency—the delayed disclosure of allegedly brutal and successive rapes. By no means should such an omission warrant immunity from an adverse credibility

determination, but neither should it form the basis of such a determination in the absence of a factual analysis that takes into account and reflects an awareness of the cultural milieu that may well have given rise to the petitioner's reluctance to initially disclose the omitted information. Accordingly, I would remand this case for an explanation that appropriately evaluates Clemente-Giron's delayed allegation of rape and does not simply characterize her previous failure to disclose sexual abuse as an inconsistency that ipso facto justifies an adverse credibility determination.

_____