# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1014

_____

|  |  |  |
|---|---|---|
| Adeyemi Osonowo, | * | |
| | * | |
| Petitioner, | * | Petition for Review of an |
| | * | Order of the Board of |
| v. | * | Immigration Appeals. |
| | * | |
| Michael B. Mukasey,[1] Attorney | * | [PUBLISHED] |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 15, 2007
Filed: April 7, 2008

_____

Before MURPHY, HANSEN, and GRUENDER, Circuit Judges.

_____

HANSEN, Circuit Judge.

Adeyemi Osonowo petitions this court for review of an order of the Board of
Immigration Appeals (BIA), which affirmed an Immigration Judge's (IJ) denial of his
application for asylum, withholding of removal, and protection under the Convention
Against Torture. We deny the petition for review.

_____

[1]Michael B. Mukasey, now Attorney General of the United States, is substituted
as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

## I.

Osonowo, a native of Nigeria, entered the United States without inspection on February 29, 2000, and removal proceedings were commenced four years later. Osonowo admitted the allegations and conceded the charge of removability. Also in 2004, he filed an application for asylum, withholding of removal, and relief under the regulations implementing the Convention Against Torture, asserting in his initial application that he suffered persecution on the basis of his membership in the Ogoni ethnic group of Nigeria and asserting in his final application before the hearing that he suffered religious persecution as well.

Osonowo was the only witness in support of his application at the hearing before the IJ. He testified that he was born in the Kwara state of Nigeria in 1964 and was educated there. He stated he is a Christian and a member of the Ogoni ethnic group, which has been in conflict with the government over the natural resources in Ogoniland, located in the southeastern region of Nigeria. He stated initially that he spoke the Ogoni language, but later in the hearing indicated he speaks only Yoruba and English. He said his parents are Ogoni; his father is dead and his mother lives in the northern part of Nigeria, not Ogoniland.

Osonowo stated that he worked in Ogoniland for small contractors from 1989 to 1994, and prior to that time he lived in Ogoniland "[o]n and off." (R. at 111.) From 1994 until 1999, he worked in central Nigeria in the capital city of Abuja as a consulting engineer. He testified generally regarding religious conflicts between Christians and Muslims in Nigeria, and specifically, that he was attacked by Muslim extremists in his home in Abuja in 1997. They allegedly beat him, and he suffered injuries requiring two weeks of treatment at a clinic in Lagos.

Osonowo stated that he moved to Kaduna in the north in 1999, where he once again suffered a Muslim attack on his home. While he was away on business on

February 22, 2000, Muslim fanatics attacked his home, his wife, and his children (he later clarified that the children were not his own but nieces and nephews). His wife resisted the attack but was hit on the head. He was told that she had taken the children to a military barracks for safety, but she died the same day some hours later either in, or en route to, a hospital in Lagos, several hundred miles away.

Osonowo decided to leave Nigeria after his wife's death. He said he could not return to Ogoniland because he had encountered problems with the tribal chiefs when he had lived there previously. He had been affiliated with the Movement for Survival of the Ogoni People (MOSOP), a group that actively protested the activities of the tribal chiefs, urged the chiefs to refuse money from oil companies, and worked to stop the destruction of the tribe's natural resources. He was not a leader of the group, but he concluded that he would not be able to return to that region because of his earlier work with the group. Feeling he was a marked man, Osonowo flew to Canada with a false passport and said he came into the United States without inspection in late February 2000. In 2001, he married a woman in the United States who filed a visa petition for him, but it was denied on the basis that the marriage was fraudulent, and they divorced. Osonowo remarried, and he and his current wife have three children.

Osonowo was questioned about why he did not apply for asylum as soon as he arrived in the United States, and why he did not mention his first wife's death or the religious-based attacks on his home in his first application. He stated he had not filed sooner because he was depressed over his wife's death and that he had advised his first attorney of all the facts but the attorney failed to include them in his application.

As documentary support for his application, Osonowo entered into evidence his own handwritten statement setting forth the facts relevant to his religious persecution claim, which he asserts he had given to his first attorney. The statement does not mention his ethnic claim or his work with MOSOP. Osonowo also submitted a recent State Department Country Report on Nigeria that included a

discussion of ethnic disputes in the country; a letter from a clinical social worker at the Center for Victims of Torture, stating that he had obtained treatment there and that they determined he was a victim of torture; and his first wife's death certificate, confirming that she died of a head injury at a hospital in Lagos but also stating that her usual place of residence was an address in the Lagos area and that she had lived there for five years. Osonowo provided no documentary proof that he was Ogoni or that he had lived in Ogoniland or worked with MOSOP, no documentary proof that he lived in Abuja or Kaduna, and no medical records to corroborate his testimony concerning his two week treatment in Lagos after the 1997 attack on his home.

The IJ concluded that discrepancies between Osonowo's asylum applications raised serious credibility concerns. The discrepancies included that his original asylum application claimed only ethnic persecution and mentioned only generalized claims of problems between the ethnic Ogoni and the Nigerian government, whereas he later claimed he could not return due to conflicts with the Ogoni chiefs and his work with MOSOP. His initial application did not mention his wife's death, the attacks on his home, or any religious persecution claim. These discrepancies were compounded by Osonowo's inability to submit corroborating documentation of basic facts other than his first wife's death by a head injury, and the IJ therefore found that Osonowo was not a credible witness. The IJ also concluded that Osonowo's asylum claim was barred by the one-year limitation of 8 U.S.C. § 1158(a)(2)(B), and that, even if a basis for the late filing had been established, Osonowo failed to meet his burden of proof, and he likewise failed to meet his burden for withholding of removal. The IJ further found no basis for concluding that the Nigerian government would target Osonowo for torture and denied relief under the Convention Against Torture.

The BIA found no clear error in the IJ's adverse credibility finding, which the BIA determined was "thorough, detailed, clear, and specific." (Appellant's Add. at 2.) The BIA noted that the IJ identified significant discrepancies between the

originally filed asylum application and the final application filed with the Immigration Court. The BIA determined it was reasonable for the IJ to require a larger quantum of corroborative evidence to support the claim in light of the discrepancies. The BIA agreed with the IJ's determination that Osonowo had failed to meet his burden of proof and accordingly, the BIA found it unnecessary to address the arguments regarding the IJ's application of the one-year filing deadline.

## II.

Osonowo sought asylum, withholding of removal, and relief under the Convention Against Torture. The Attorney General has discretion to grant asylum to any person who is a "refugee," 8 U.S.C. § 1158(b)(1) (2000), that is, a person who is unable or unwilling to return to that person's home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A). See also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Eligibility for withholding of removal requires proof of a clear probability that the alien's life or freedom would be threatened on the basis of one of these specified grounds if removed to the country in question, which is a more demanding standard than the well-founded fear of persecution standard for asylum. Guled v. Mukasey, 515 F.3d 872, 881 (8th Cir. 2008). Therefore, an alien who fails to meet the standard for asylum cannot meet the more rigorous standard for establishing eligibility for withholding of removal. Id. Finally, "[a]n applicant seeking relief under the Convention Against Torture bears the burden of establishing 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Id. (quoting 8 C.F.R. § 208.16(c)(2)).

We generally review the BIA's decision as the final agency action, but where "the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions." Eta-Ndu v. Gonzales, 411 F.3d 977, 982 (8th Cir. 2005) (internal marks omitted); see also Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir.

-5-

2006) ("Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA."). We review the agency determination that an alien is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture using the deferential substantial evidence standard. Guled, 515 F.3d at 879. Under this deferential standard of review, we are "not at liberty to reweigh the evidence," and we will uphold the denial of relief unless the alien demonstrates that the evidence "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Eta-Ndu, 411 F.3d at 982 (internal marks omitted).

Osonowo seeks judicial review, asserting that the agency's adverse credibility finding is not supported by substantial evidence. A credibility determination is a finding of fact, which should be accepted "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2000); see Chen v. Mukasey, 510 F.3d 797, 800-01 (8th Cir. 2007) (noting the codification of standards pertaining to credibility determinations in the Real ID Act of 2005, which are not applicable to cases filed before May 11, 2005). To overturn the BIA and IJ's adverse credibility determination, "we must conclude not only that a persuasive case has been made for the opposite position, but that any reasonable fact-finder would be persuaded by it." Menendez-Donis v. Ashcroft, 360 F.3d 915, 918 (8th Cir. 2004). "Credibility findings in particular are entitled to much weight . . . [and] inconsistencies and inadequacies in the most critical portions" of the alien's testimony of past persecution support an adverse credibility finding. Fofanah, 447 F.3d at 1040. When the BIA has adopted and affirmed the IJ's adverse credibility determination, we defer to those findings if "supported by specific, cogent reasons for disbelief." Onsongo v. Gonzales, 457 F.3d 849, 852 (8th Cir. 2006).

We conclude that the IJ offered an adequate explanation for the credibility assessment and that the record supports the adverse credibility determination. The IJ first concluded that the discrepancies between Osonowo's first application claiming

only ethnic persecution of the Ogoni people in general and the final application claiming both ethnic and religious persecution raised concerns that warranted a closer look for corroborating evidence. Osonowo argues that the discrepancies noted by the BIA and IJ were minor, characterizing them as resulting from his continued attempt to provide more information rather than inconsistent information. However, the omission of his conflict with the chiefs, his work with MOSOP, his first wife's death, and the two attacks on his home due to religious persecution cannot be characterized as minor discrepancies because they are the most critical portions of his testimony, and they were noticeably absent from his initial application. Osonowo's failure to present any crucial corroboration of this additional information, combined with the discrepancies noted by the IJ and BIA, ultimately resulted in the adverse credibility finding. See Esaka v. Ashcroft, 397 F.3d 1105, 1110 (8th Cir. 2005) (adverse credibility determinations may be based on a lack of corroborating evidence combined with inconsistencies, contradictions or inherently improbable testimony).

Osonowo asserts that the IJ demanded corroborating evidence that he could not obtain under the existing circumstances. "While we recognize that petitioners cannot be expected to get substantial documentation from their persecutors," Gebresadik v. Gonzales, 491 F.3d 846, 851 (8th Cir. 2007) (internal marks omitted), the IJ here found that Osonowo's lack of effort to obtain corroborating documentation of even the most basic information was significant in light of the other discrepancies noted. Osonowo failed to provide any objective evidence to corroborate that he was Ogoni, that he had been affiliated with MOSOP, that he had lived in the places he claimed to have lived, or that he had received two weeks of medical treatment following one of the attacks. The record indicates that Osonowo was not born in an Ogoni area, he does not speak the Ogoni language, and his education took place in non-Ogoni areas. The only objective corroborating evidence is the conclusory statement of a social worker in Minnesota that Osonowo had suffered torture and his wife's death certificate, indicating she died of a head injury. The death certificate indicates that his wife died on the same day Osonowo said his home was attacked in Kaduna, but

it records that she died in a hospital hundreds of miles away from Kaduna, and this was contrary to his own handwritten statement that she died in the military barracks where the family took shelter. (Compare R. at 163 with R. at 224-45.) Additionally, the death certificate does not confirm that his wife lived in Kaduna. This evidence does not compel a contrary conclusion.

Osonowo asserts that the BIA and IJ erroneously overlooked the consistencies between his initial statement to the asylum officer and his hearing testimony, and he asserts that his attorney is responsible for the omissions from his initial application. As noted above, however, the omissions and discrepancies involve the most crucial information necessary to his claims, and despite his consistent testimony, the record includes other internal discrepancies, which, along with his failure to provide objective corroborating evidence for his claims, supports the adverse credibility finding.

Based upon this record, we cannot say that a reasonable adjudicator would be compelled to a contrary conclusion regarding Osonowo's credibility. Where the credibility determination goes to the heart of the alien's claims, it can be dispositive of the merits of the asylum claim. See Guled, 515 F.3d at 880-81. In light of the whole record and the adverse credibility finding, the evidence is not so compelling that no reasonable fact finder could fail to find the requisite fear of persecution necessary to a grant of asylum. Because we conclude that the agency did not err in determining that Osonowo does not meet the well-founded fear of persecution standard for asylum, we likewise find no error in the conclusion that he does not meet the more rigorous standard for withholding of removal. See id. at 881.

We review the denial of Osonowo's claim for relief under the Convention Against Torture for "whether the evidence was so compelling that a reasonable factfinder must have found the alien entitled to relief under the Convention." Ngure v. Ashcroft, 367 F.3d 975, 992 (8th Cir. 2004). To obtain relief under the

Convention Against Torture, an alien must establish that it is more likely than not that the alien would be tortured if removed to the country in question. Guled, 515 F.3d at 881; 8 C.F.R. § 208.16(c)(2). While the decision regarding Osonowo's requests for asylum and withholding of removal are not necessarily determinative of a claim under the Convention Against Torture, Osonowo has not met his burden of demonstrating that he would suffer torture by the government of Nigeria for any reasons other than those advanced in his discredited asylum and withholding of removal claims. See Onsongo, 457 F.3d at 855-56. Thus, the BIA and IJ did not err in denying him relief under the Convention Against Torture.

Osonowo asserts that the IJ erred in its application of the one-year filing bar to his claims. The BIA expressly stated that it did not need to consider Osonowo's arguments regarding the timeliness of his application for asylum because it determined that he failed to meet his burden of proof for asylum, even assuming that his application had been timely or that he had established a basis for the late filing. The issues Osonowo attempts to raise regarding the IJ's application of the one-year filing rule, therefore, are not properly before this court. Id. at 852 n.4.

III.

For the foregoing reasons, we deny Osonowo's petition for judicial review.

_____