# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2278

_____

| | | |
|---|---|---|
| Janet Che, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review from the |
| | * | Board of Immigration Appeals. |
| Michael B. Mukasey,[1] | * | |
| Attorney General of the | * | |
| United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 15, 2008
Filed: July 14, 2008

_____

Before MELLOY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Janet Kemu Che, a native and citizen of Cameroon, petitions for review of a final order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") to deny her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition for review.

_____

[1] Michael B. Mukasey, now Attorney General of the United States, is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

## I.

Che was born on May 17, 1968, in Cameroon, where she resided until she started her university studies in Nigeria, where she studied to become a teacher. While she was a student in Nigeria, Che traveled back to Cameroon on several occasions. Che was a member of a political opposition group in Cameroon called the Social Democratic Front ("SDF"). Che alleges that due to her membership in the SDF, she was imprisoned in Cameroon for four months in 1993, and for two weeks in 1998.[2] Che states that she and her parents were threatened with harm if they refused to resign from the SDF and join a group that supports the Cameroon government. Noting the deplorable prison conditions in Cameroon and her fear of being imprisoned again, Che left Cameroon prior to her next court date and without obtaining or using a valid passport or visa. Instead, on April 28, 1998, she purchased a fraudulent French passport and traveled from Douala, Cameroon to Paris, France. The following day, she departed Paris and arrived illegally at Dulles International Airport in Washington, D.C.

Upon her arrival in the United States, Che lived in Minnesota, where she obtained employment using the identity of her cousin, Delphine Che ("Delphine"), who was in the United States as a permanent resident alien. While in the United States, Che reports that she has been employed in the following positions: (1) sales clerk at Walgreens, (2) group home work at Connection Group Home, and (3) office work at Western National Insurance. The record also reflects that Che was employed as a sales clerk at Dayton's department store from December 11, 1998, to March 17, 1999. While employed at Dayton's, Che engaged in 12 fraudulent transactions totaling $626.75, in which she rang up fictitious "returns" of nonexistent merchandise and fraudulently obtained store credit or cash for her own use. When interviewed

---

[2]Che claims that when she was released following her two-week detention in a Cameroonian prison, she was given a date to return to court.

about these thefts, Che admitted that she was not entitled to the cash or store credit that she took. In addition, Che confessed that she also fraudulently obtained items from the store by taking unauthorized markdowns. During this interview with law enforcement, Che continued to use the name of Delphine. Che was arrested and subsequently charged with two offenses: (1) felony theft over $500 and (2) providing false information to police, a gross misdemeanor. After her successful completion of the Hennepin County Pre-Trial Diversion Program, the state dismissed the criminal charges against Che on October 23, 2000.

Che applied for Asylum and Withholding of Removal on June 12, 1998 (T. 824-832, 445), nine months prior to her arrest for the felony theft charge. When her arrest was reported to immigration authorities, a formal Report of Deportable/Inadmissible Alien was prepared on Che on March 22, 1999 (T. 818), and removal proceedings were commenced on May 17, 1999 (T. 444). Prior to rendering his initial decision, the IJ conducted proceedings on six different occasions: (1) November 16, 1999 (T. 467); (2) August 8, 2001 (T. 476); (3) December 4, 2001 (T. 570); (4) March 8, 2002 (T. 575); (5) July 19, 2002 (T. 619); and (6) June 13, 2003 (T. 626). The IJ's initial decision denying Che's applications was announced in open court on June 13, 2003 (T. 444), but was reversed by the BIA on October 4, 2004 (T. 401). Thereafter, the IJ conducted proceedings on three more occasions, and again denied Che's petition for asylum, withholding of removal and protection under CAT. On October 12, 2005, the IJ ordered that Che be removed (T. 61). Che again appealed to the BIA, which upheld the second decision of the IJ on May 7, 2007 (T. 2). Che now petitions this court for review of the BIA's decision upholding the decision of the IJ.

## II.

In this petition, Che argues that: (1) the finding that she was not credible was not supported by substantial evidence; (2) the facts warrant a grant of asylum; and

(3) she is entitled to withholding of removal and deferral of removal pursuant to CAT. As the applicant, Che bears the burden of proving her claims for asylum, withholding of removal,[3] and for protection under CAT. See 8 U.S.C. § 1158(1)(B)(i); 8 C.F.R. § 208.16 (c)(2).

We review the BIA's determination of claims for asylum, withholding of removal, and relief under the CAT using the standard of substantial evidence, an "'extremely deferential standard of review.'" Guled v. Mukasey, 515 F.3d 872, 879 (8th Cir. 2008) (quoting Diallo v. Mukasey, 508 F.3d 451, 454 (8th Cir. 2007)). Using this deferential standard of review, we will not reverse a denial of an application for relief unless it is demonstrated that the evidence presented "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Osonowo v. Mukasey, 521 F.3d 922, 927 (8th Cir. 2008) (quoting Eta-Ndu v. Gonazales, 411 F.3d 977, 982 (8th Cir. 2005)[4]).

---

[3]Che's application for asylum is deemed to constitute her simultaneous application for withholding of removal. See Abrha v. Gonzales, 433 F.3d 1072, 1076 (8th Cir. 2006); 8 C.F.R. § 1208.3(b).

[4] Jacob Eta-Ndu was a petitioner in this case, involving the issue of Jacob Eta-Ndu's credibility being suspect due to the suspicious nature of the documentation he presented as proof of his SDF membership. We denied his petition for review on June 23, 2005.

We note that in the case at bar, Che produced a letter dated "February 28, 2005," attesting that she was a member of the SDF in the United States with a "current membership card" which was "valid until 12/31/2004." This letter was signed by the Provincial Secretary of the SDF-USA, Jacob Eta-Ndu, the petitioner in 411 F.3d 977.

## III.

The Attorney General may grant asylum to any person who meets the definition of a refugee because that person is unwilling to return to her own country due to previously endured persecution or a well-founded fear of future persecution based on her "race, religion, nationality, membership in a particular social group, or political opinion." Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008) (quoting 8 U.S.C. § 1101 (a)(42)(A)).  Therefore, to prevail on her claim for asylum, Che must first establish that she is a refugee who has been persecuted or has a well-founded fear of future persecution due to her involvement with the SDF in Cameroon. See Osonowo, 521 F.3d at 926.

Che's application includes a request for withholding of removal.  The standard of proof for her request to withhold removal is more stringent than that of asylum, because Che must demonstrate that there is a clear probability that she will encounter persecution if she is returned. See Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir. 2007).   "Therefore, an alien who fails to meet the standard for asylum cannot meet the more rigorous standard for establishing eligibility for withholding of removal." Osonowo,  521 F.3d at 926.

Che also seeks relief under the CAT.  To prevail on this claim for relief, Che must prove that it is more likely than not that she will be tortured if she is removed to Cameroon, the proposed country of removal. Id.; 8 C.F.R. § 208.16 (c)(2).  We note that while determinations of credibility, asylum and withholding of removal are not absolutely determinative of the outcome of a CAT claim, they may be considered and the applicant continues to bear the burden of proof for relief under the CAT. See Guled, 515 F.3d at 881-82.

Che first attacks the adverse credibility finding of the IJ, which was adopted by the BIA. We defer to an IJ's findings of credibility when supported by "a specific, cogent reason for disbelief." Diallo, 508 F.3d at 454 (8th Cir. 2007) (quoting Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002)). In his decision, the IJ outlined the evidence which caused him to find Che and some of her documentary evidence to be less than credible.

First, the IJ stated that a Cameroon news article relied upon by Che appeared to be manufactured or "planted" and noted her inconsistent testimony about her involvement in activities and the accuracy of events discussed in the article. Next, the IJ cited several portions of Che's testimony which he found to be implausible. One example involved Che's testimony that her father was a police or immigration officer employed by the government of Cameroon and a known founding member of the SDF; yet, his membership did not interfere in any way with his job as a government official. The IJ also found questionable the validity of allegedly original Mbangui court[5] documentation provided by Che in support of her assertion that she was twice charged and jailed for her involvement in SDF activities. While Che asserted that her uncle obtained her original documents through bribery of the clerk of the court, she also professed to provide an affidavit from the same court clerk which asserted that Che was in fact incarcerated in Cameroon. The IJ noted that it would be inconsistent and against the best interests of a person who provided an original court document in exchange for a bribe to also provide an affidavit of incarceration. Despite having the court documents, Che's charges and incarceration in Cameroon could not be verified by the United States Embassy with the court in Cameroon. Additionally, the IJ noted that, while Che asserts that she underwent medical treatment as a result of injuries she received during her incarceration, she

_____

[5]The Mbangui court is a local court in Cameroon.

presented no medical records of such treatment. Next, the IJ observed that the photograph of Che used in the newspaper article is the same photograph on Che's SDF identification card, yet she testified that she did not provide the photo to the newspaper. While the IJ specifically stated that he did not hold it against Che that she used a false name and passport to enter the United States, he voiced his concerns about Che's credibility due to her use of a false identity for employment purposes and with police after she entered the United States. The IJ considered the totality of the circumstances and determined that Che and her claims were not credible.

In the order upholding the decision of the IJ to deny Che's application for relief, the BIA considered the inconsistencies in Che's written application, her testimony and the documents submitted by the parties. The BIA determined that based on the entirety of the record, the IJ's findings were not clearly erroneous and that Che failed to satisfy her burden of proof as to her claims for asylum, withholding or removal and relief under CAT.

We find that the IJ's credibility finding is based on itemized, persuasive reasons and the decision of the BIA upholding this finding is supported by substantial evidence. In light of Che's failure to produce credible proof of persecution or well-founded fear of future persecution, we find the BIA's decisions to deny her claims for asylum and withholding of removal are supported by substantial evidence.

We only conduct an independent analysis of a CAT claim when there is evidence an applicant would face torture for reasons not related to the applicant's claims for asylum and withholding of removal. See Ibrahim v. Gonzales, 434 F.3d 1074, 1080 (8th Cir. 2006). Che has presented no such evidence. Therefore, we find the BIA's decision to deny Che's request for relief under the CAT is supported by substantial evidence.

Che also argues that the government breached the confidentiality requirement of her asylum application by seeking Cameroon court records in her name. <u>See</u> 8 C.F.R. § 208.6. Che's proof of a violation is limited to the use of her name by the United States Embassy when court records were sought. Even if the use of Che's name constitutes a disclosure, we are by no means certain that such a disclosure would reasonably infer Che is seeking asylum. <u>See</u> <u>Averianova v. Mukasey</u>, 509 F.3d 890, 899 (8th Cir. 2007). As we have previously noted, "many documents, such as . . . some court records, do not necessarily imply that a foreign national is seeking asylum." <u>Id.</u> at 899-900 (<u>quoting</u> <u>Lin v. U.S. Dept. of Justice</u>, 459 F.3d 255, 270 (8th Cir. 2006)). Indeed, criminal records may be sought for a variety of reasons unrelated to a claim for asylum, including a: criminal investigation; background investigation of a witness; visa petition; marriage investigation; background investigation related to custody, guardianship, or adoption of a child; or employment application. However, assuming without deciding that the use of Che's name was a disclosure that violated the regulation, the same would be of no consequence in the pending claim for asylum. <u>See</u> <u>id.</u> at 899-900.

V.

Accordingly, we deny Che's petition for review.

_____