# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2769
No. 07-3281

_____

|  |  |  |
|---|---|---|
| Jude Ikechukwu Alanwoko, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of |
| v. | * | Orders of the |
| | * | Board of Immigration Appeals. |
| Michael B. Mukasey,[1] Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: May 16, 2008
Filed: August 14, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jude Ikechukwu Alanwoko, a native and citizen of Nigeria, petitions for review of the Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") decision denying him asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Alanwoko also petitions for review of the BIA's denial of his motion to reopen the removal proceedings based on new evidence

---

[1]Michael B. Mukasey, now Attorney General of the United States, is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

that was not available at the time of the original hearing.  Having consolidated the two petitions, we now deny them.

## I. Background

Alanwoko arrived in the United States on or about February 3, 2004, as a nonimmigrant visitor for business, with authorization to remain in the United States for a temporary period not to exceed February 23, 2004.  He remained past that date, however, and on February 1, 2005, he filed a request for asylum and for withholding of removal, asserting that he suffered past persecution in Nigeria because of his Christian religion and that he was specifically targeted by Muslim extremists because of his evangelism and leadership at church.  On March 15, 2006, the Department of Homeland Security charged Alanwoko with removability under 8 U.S.C. § 1227(a)(1)(B).  At a hearing before an IJ, Alanwoko admitted the charge that he was removable, but declined to designate a country of removal.  The IJ designated Nigeria.

The IJ found Alanwoko to be generally credible and credited his testimony that he is a soccer player and was a potentially prominent player in Nigeria, in the Gambia, and other countries.  Alanwoko testified that he is a Christian and that he was involved in the church in Nigeria and in the Gambia.  The IJ acknowledged that there are conflicts between Christians and Muslims in Nigeria and that Alanwoko had problems with Muslims in 1998 after his high school Christian student group received written and verbal threats from Muslim students and the leader of the group was killed.  Two weeks later, Alanwoko was beaten up and warned that if he did not stop evangelizing, he would suffer a similar fate.  Alanwoko was injured during the attack but did not seek medical attention.  He was not attacked again until 1999, when he returned to his high school to evangelize at an assembly.  While he was speaking, approximately 500 Muslims rushed into the school and disrupted the assembly.  A number of these individuals proceeded to the stage and struck Alanwoko with a baton.  The police

arrived and brought Alanwoko to the station, where he remained until his brother arrived. Following that incident, Alanwoko fled to the Gambia in January 2000.

After moving to the Gambia, Alanwoko received an invitation to play soccer in Maldives Island. Accordingly, he returned to Nigeria in 2001 to obtain a visa. He testified that he was not afraid to return to Nigeria at that point because it had been approximately a year-and-a-half since the 1999 beating and he believed that the extremists would have forgotten about him by then. Upon his return, however, he was shot in the back while walking to church, with a bullet remaining in his body. He went to the hospital but did not contact the police, believing that to do so would draw more attention to himself, put him at risk of future harm, and would in any event be futile. Shortly thereafter, he traveled to Maldives Island to play soccer. He remained there until his contract was cancelled because the pain from the gunshot wound was affecting his ability to play. Having no where else to go, he returned to Nigeria in September 2001, where he remained in hiding. In December 2001, he was able to return to the Gambia to play soccer, which qualified him for a work permit that needed to be renewed annually. In late 2003, Alanwoko was invited to try out for a soccer team in the United States. His team in the Gambia asked him to continue to play with them for two months, promising to pay for his trip to the United States if he agreed to do so. Alanwoko complied and, as indicated above, arrived in the United States in February 2004.

Alanwoko's older brother, Boniface, submitted an affidavit describing the attacks on Alanwoko and the police response, or lack thereof. After Alanwoko was shot in 2001, and four days after Boniface helped Alanwoko flee the country, Boniface was detained by the Nigerian police for two weeks. The police beat him, burned him, and accused him of helping a wounded criminal escape. Shortly thereafter, Boniface was attacked by Muslim extremists on at least two occasions, and someone inquired throughout his neighborhood about his and Alanwoko's whereabouts. When Alanwoko was only two months old, his father, also a Christian,

was killed as a result of clashes between Muslims and Christians, and in 2004, Alanwoko's other brother, Nkashi, was killed while on his way to church.

After receiving Alanwoko's testimony, the testimony of one of Alanwoko's spiritual leaders, the affidavits in support of Alanwoko's plea, and reviewing the country reports regarding Nigeria, the IJ denied Alanwoko's application for asylum, withholding of removal, and CAT relief. The BIA affirmed and also denied Alanwoko's motion to reopen the proceedings based upon new evidence that prominent Christian soccer players in Nigeria were being persecuted.

## II. Asylum, Withholding of Removal, and CAT Relief

The Attorney General has the discretion to grant asylum to any person who satisfies the definition of "refugee." Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008). To qualify for such relief, Alanwoko must establish that he is unwilling to return to Nigeria because of a well-founded fear of future persecution based upon his "race, religion, nationality, membership in a particular social group, or political opinion." See 8 U.S.C. § 1158(b)(1)(B). "A well-founded fear is one that is both subjectively genuine and objectively reasonable." Falaja v. Gonzales, 418 F.3d 889, 894 (8th Cir. 2005) (internal quotation omitted). To prevail on a motion for withholding of removal, Alanwoko must meet the even higher standard of proving that there is a clear probability that his life or freedom would be threatened on one of the above stated bases if removed to Nigeria. See Osonowo, 521 F.3d at 926. To receive CAT relief, Alanwoko must establish that it is more likely than not that he will be tortured if he returns to Nigeria. See id. (citing 8 C.F.R. § 208.16(c)(2)); see also 8 C.F.R. § 208.18(a)(1) (defining "torture").

"We generally review the BIA's decision as the final agency action, but where 'the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions.'" Osonowo, 521 F.3d at 926 (quoting Eta-Ndu v.

Gonzales, 411 F.3d 977, 982 (8th Cir. 2005)).[2] We review the denial of asylum under the deferential substantial evidence standard and "uphold the agency unless the evidence 'was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" Vonhm v. Gonzales, 454 F.3d 825, 828 (8th Cir. 2006) (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992)).

The IJ found that Alanwoko fears "the general unrest in Nigeria in the places where there are conflicts between the Muslims and the Christians," but that he did not suffer past persecution or have a well-founded fear of future persecution because he did not show that the government is unwilling or unable to protect him from persecution. A.R. at 162. These findings were based primarily on the following facts. Alanwoko did not know who shot him in 2001, and he did not report the shooting or the 1998 high school incident to the police. During the 1999 beating incident, the police arrived and held Alanwoko at the police station until his brother picked him up. Alanwoko did not establish that other prominent soccer players were persecuted because of their religion, and Alanwoko's mother, who converted to Christianity before Alanwoko was born, has not been physically harmed. Additionally, President Obasanjo converted to Christianity before he became President and has not been harmed as a result of his religion. The Nigerian government respects religious freedom, which is protected under the Nigerian Constitution, and although the northern part of the country is predominately Muslim, there are several areas in the

---

[2]Alanwoko argues in his reply brief that because the BIA did not specifically adopt the IJ's decision, we can review only the BIA's stated reason for affirming the IJ's decision. Reply Br. at 21-22. Alanwoko cites Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir. 1990), to support his contention. Mayo is distinguishable, however, because the reviewing court affirmed the agency decision for a reason not stated by the agency. In the case before us, the BIA highlighted one of the reasons stated by the IJ for its decision and concluded that that reason alone was sufficient to affirm the IJ's conclusion that Alanwoko did not meet his burden to establish eligibility for asylum. Accordingly, the BIA's decision essentially adopted the IJ's decision, and we therefore review both decisions.

southern and eastern parts of Nigeria that are predominately Christian. The IJ also noted that Alanwoko has left Nigeria and returned on more than one occasion since his graduation from high school. Alanwoko played soccer in the Gambia and had a residential permit to do so for at least three years. Nevertheless, he made no attempt to determine whether he could obtain asylum in the Gambia. In 2003, Alanwoko's wife traveled to the United Kingdom for medical reasons, but Alanwoko did not accompany her. The IJ concluded that because Alanwoko had not sought asylum or refugee status in any of the countries he had previously traveled through, with the exception of Spain,[3] his arrival in this country was not the result of a flight from persecution.

Alanwoko asserts that although the police were aware of the 1998 attacks, they failed to investigate the killing of the Christian student group leader, the threats against the Christian student group generally, or the threats against Alanwoko specifically. He asserts that he did not go to the police after he was shot because the police were aware of prior Muslim threats and had not investigated or arrested perpetrators, and therefore any report to the police would have been futile. He also asserts that he cannot relocate to the predominately Christian areas of Nigeria because he has already suffered attacks in those areas and would likely be attacked again because he is a well-known Christian soccer player. Accordingly, he argues that because he was subjected to past persecution, the IJ and the BIA erred by not applying the presumption of a well-founded fear of future persecution pursuant to 8 C.F.R. § 208.13(b)(1).

We conclude that the evidence in the record that Alanwoko was subjected to past persecution is not so compelling that no reasonable fact-finder could fail to find

---

[3]Alanwoko testified that he applied for a visa through the Spanish Embassy when he had a tryout in Spain but that his application was denied. A.R. 367.

the requisite fear of persecution.[4] See Miranda v. I.N.S., 139 F.3d 624, 626 (8th Cir. 1998) (the Court of Appeals may not reweigh the evidence in determining whether there is substantial evidence in the record that supports the agency determination). Alanwoko's arguments do not overcome the IJ's findings that he was not fleeing persecution when he arrived in the United States or the IJ's observation that Alanwoko's claim of persecution was weakened by the fact that he traveled from and to Nigeria, observing the usual passport requirement each time, and that he lived in the Gambia for a number of years without seeking asylum. Although Alanwoko asserts that going to the police after the 1998 incident and the 2001 shooting would have been futile, the IJ's conclusion otherwise is supported by Alanwoko's own testimony that the police helped him after the 1999 beating incident and that he was not afraid to reenter Nigeria in 2001 before the shooting took place. Accordingly, we conclude that there is substantial evidence in the original record to support the agency's decision, and we therefore deny the petition for review. See Setiadi v. Gonzales, 437 F.3d 710, 713-14 (8th Cir. 2006) (denying petition for review of IJ's denial of asylum); Menjivar v. Gonzales, 416 F.3d 918, 922 (8th Cir. 2005) (same).

Because Alanwoko did not satisfy his burden on the asylum claim, and because he is not asserting that torture would occur for a reason other than his religion, the IJ did not err by denying withholding of removal or CAT relief. See Falaja, 418 F.3d at 897; Samedov v. Gonzales, 422 F.3d 704, 708-09 (8th Cir. 2005).

---

[4]We note that with regard to Alanwoko's petition for review of the agency's decision to deny him asylum and related relief, we are not considering the new evidence that Alanwoko submitted in his motion to reopen.

## III. Motion to Reopen

Following the BIA's affirmance of the IJ's decision, Alanwoko filed a motion to reopen the removal proceedings. The decision to grant a motion to reopen is discretionary. Alemu v. Mukasey, 509 F.3d 907, 909 (8th Cir. 2007). The petitioner must "state the new facts that will be proven at a hearing to be held if the motion is granted." 8 U.S.C. § 1229a(c)(7)(B). Additionally, the petitioner has the burden of establishing that if the motion is granted, the new evidence would likely change the result of the proceedings. Jalloh v. Gonzales, 423 F.3d 894, 899 (8th Cir. 2005).

In support of his motion, Alanwoko filed several newspaper articles reporting on the attempted shooting of Obafemi Martins that occurred in June of 2007. Martins is a prominent soccer player from Nigeria, and although the articles did not indicate Martins's religion or the religion of the attackers, Alanwoko attested to the fact that Martins is a well-known Christian athlete in Nigeria, that he prays publicly on the soccer field, that he bears a Christian name, that he was shot at after a soccer game, and that the police refused to investigate the shooting.

The BIA denied the motion to reopen, concluding that the evidence was insufficient to show that Alanwoko made out a prima facie case for asylum or related relief because he did not establish a relationship between the attack on Martins and Muslim persecution of Christians in Nigeria. We review for abuse of discretion the BIA's denial of a motion to reopen removal proceedings. Kanyi v. Gonzales, 406 F.3d 1087, 1089 (8th Cir. 2005). An abuse of discretion occurs if the BIA's decision is "without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Id. (internal quotation omitted).

Alanwoko argues that the BIA abused its discretion by denying his motion to reopen because he presented new evidence that directly addressed the IJ's reason for denying asylum and that the BIA should have accepted his assertions as true because they were not inherently unbelievable. Although Alanwoko asserted that Martins was attacked because he is a well-known Christian, the only article that speculates about the motive of the attackers indicates that Martins himself believed the attack was in retaliation for his missing a recent international soccer game. The BIA concluded that Alanwoko's assertions were insufficient to establish a relationship between the shooting and Muslim persecution of Christians in Nigeria. We conclude that the BIA, having considered the newly presented evidence, did not abuse its discretion by denying the motion to reopen. See Alemu, 509 F.3d at 910 (the BIA's conclusion that a newspaper article, offered by the petitioner to show changed country conditions, did not indicate a change in the country conditions was reasonable because the article addressed the health effects of torture, not the current conditions in Ethiopia).

The consolidated petitions for review are denied.

_____