# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1131

_____

Oumar Sow,

        Petitioner,

v.

Michael B. Mukasey, Attorney General
of the United States,

        Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals.

_____

Submitted: October 17, 2008
Filed: November 19, 2008

_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Oumar Sow, a member of the Fulani ethnic group who claims to be a citizen of Mauritania, petitions for review of a final order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition for review.

I.

Oumar Sow is a Fulani who claims to have fled Mauritania during a period of ethnic tension and violence from 1989 through 1991. He entered the United States on either January 1, 1996, or January 17, 1997. On October 28, 1997, the former Immigration and Naturalization Service ("INS") served him with a Notice to Appear charging him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Sow conceded removability, but sought relief in the form of asylum, withholding of removal, and protection under the CAT.

At the hearings before the IJ, Sow testified that eight government soldiers forced him and his family to leave Mauritania on June 20, 1990. The soldiers separated him from his family and took him to a military camp. After spending eight days without food at the military camp, soldiers allegedly took him to the Senegalese-Mauritanian border and forced him to enter Senegal. Once in Senegal, other "militaries" took him to a refugee camp, where he was reunited with his family. After spending four years in the refugee camp, he moved to Dakar, Senegal for two years. Neither Sow nor his family have returned to Mauritania since 1990. He stated that his family was currently "fine in Senegal."

Sow testified that he arrived in Miami, Florida on January 1, 1996. However, he had stated on his original application for asylum that he arrived in the United States on January 16, 1997. Shortly after his arrival, he was arrested in New York City for selling merchandise on the street. He gave police a false name, because he had no identification papers and feared that he would be deported. He pled guilty to the charges.

Sow submitted two birth certificates in support of his application for relief from removal, one handwritten and one typewritten. He claimed that a courier obtained both certificates from his mother in Senegal, and brought them to New York. He

could not identify the courier or explain to the IJ why he submitted two birth certificates. The Forensic Document Examiner ("Examiner") attested that the typewritten certificate was in all likelihood a forgery, noting that it was produced on a photocopier and did not conform to the high quality printing process used in the production of similar documents. Although the Examiner could not definitively authenticate the handwritten certificate, he stated that it was "probably what it purports to be."

During his testimony before the IJ, Sow denied ever having a refugee card. However, Sow's original application for asylum referenced a refugee card number. Although he stated that his family currently resides in Senegal, he did not submit any documentary evidence in support of his claim that he had been a refugee there.

In rejecting Sow's application for asylum, withholding of removal, and relief under the CAT, the IJ found Sow not to be credible. In support of his adverse credibility finding, the IJ noted several discrepancies that undermined Sow's application. The IJ found especially troubling the fact that Sow submitted two birth certificates, one of which was determined to be fraudulent. Sow's inability to recall the name of the courier that obtained the certificates cast further doubt on whether he was a citizen of Mauritania. The IJ also cited Sow's inability to support his claim that he was a refugee in Senegal, as well as Sow's testimony that he never possessed a refugee card, even though his original asylum application made reference to such a card. Although Sow claimed to be a citizen of Mauritania, he had denied that he was a citizen of Mauritania earlier in the proceedings. Finally, the IJ noted that Sow's reliability was undermined by the fact that he had given police a false name upon his arrest in 1997.

Although the adverse credibility determination was a sufficient basis on which to reject Sow's application, the IJ also found that even if Sow were credible, he had failed to show a "well-founded fear of persecution" necessary for asylum because,

according to evidence in the record, the conditions in Mauritania have improved since the period of civil strife that Sow claims drove him into Senegal. The IJ also rejected Sow's application for withholding of removal and CAT claim on the same grounds. The BIA affirmed the IJ's decision, finding no "clear error" in the IJ's adverse credibility determination and agreeing that Sow had provided insufficient evidence to support his application. In particular, the BIA noted that Sow's failure to establish either his Mauritanian citizenship or his refugee status fatally undermined his application for relief. Sow petitions this court for review of the BIA's decision.

## II.

In his petition, Sow argues that: (1) the adverse credibility determination was not supported by "substantial evidence"; (2) the facts merit a grant of asylum and/or withholding of removal; and (3) the facts warrant relief under the CAT.

"The Attorney General has discretion to grant asylum to any person who is a 'refugee,' . . . that is, a person who is unable or unwilling to return to that person's home country 'because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]'" Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008) (quoting 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A)). Furthermore, "[p]roof of past persecution entitles an applicant to a presumption that he has a well-founded fear of future persecution on the same basis." Cooke v. Mukasey, 538 F.3d 899, 903 (8th Cir. 2008) (citing 8 C.F.R. § 208.13(b)(1)). In order to obtain asylum, Sow must establish that he has been "persecuted or has a well-founded fear of future persecution" on account of being a Fulani in Mauritania. See, Che v. Mukasey, 532 F.3d 778, 781 (8th Cir. 2008).

Sow also seeks withholding of removal, which is a mandatory form of relief if the applicant "show[s] a clear probability that he or she will face persecution in the

country to which he or she will be deported." Hasalla v. Ashcroft, 367 F.3d 799, 803 (8th Cir. 2004) (quotation omitted); see 8 U.S.C. § 1231(b)(3). "The standard for mandatory withholding of removal . . . is more demanding than that of asylum." Hasalla, 367 F.3d at 803. "Therefore, an alien who fails to meet the standard for asylum cannot meet the more rigorous standard for establishing eligibility for withholding of removal." Che, 532 F.3d at 781 (quotation omitted).

Finally, Sow seeks relief under the CAT. To prevail on this claim, Sow "must prove that it is more likely than not that [he] will be tortured if [he] is removed to [Mauritania], the proposed country of removal." Id.; see 8 C.F.R. § 208.16(c)(2). Although claims of "torture" and "persecution" are not identical, when the two claims are based on the same allegations, it is unlikely that an applicant whose asylum application is rejected will be able to obtain relief under the CAT. See Che, 532 F.3d at 781-82 (credibility and asylum determinations may be considered when deciding CAT claims); Guled v. Mukasey, 515 F.3d 872, 882 (8th Cir. 2008) ("A separate analysis . . . is required only when there is evidence the alien may be tortured for reasons unrelated to his claims for asylum and withholding of removal.").

We review the BIA's denial of an application for asylum, withholding of removal, and relief under the CAT using the deferential substantial evidence standard. Osonowo, 521 F.3d at 927. An adverse credibility determination is a finding of fact also reviewed for substantial evidence. Id. "This court defers to an immigration judge's credibility finding where the finding is supported by a specific, cogent reason for disbelief."[1] Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (quotation

---

[1] The REAL ID Act of 2005 changed somewhat the standard to be used by a trier of fact in making credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). However, this new provision does not apply to applications for asylum or withholding of removal filed before May 11, 2005. See 8 U.S.C. § 1158 note (Effective and

omitted). We will affirm a credibility finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." Osonowo, 521 F.3d at 927 (quoting 8 U.S.C. § 1252(b)(4)(B)).

First, Sow failed to provide reliable documentary evidence supporting his alleged Mauritanian citizenship. He provided two birth certificates, one of which was found to be fraudulent by the Examiner. He could not name the courier who obtained the certificates from his mother in Senegal. Furthermore, the record indicates that, at an earlier stage in the proceeding, Sow had denied being from Mauritania. Second, Sow did not provide any documentary evidence that he was a refugee in Senegal, and testified that he never had a refugee card. This omission was notably problematic because his original asylum application mentioned a refugee card number. Third, Sow admitted to giving police a false name when he was arrested in 1997.

These significant discrepancies, taken together with the lack of evidence in support of Sow's application, provide substantial support for the IJ's adverse credibility finding. A reasonable fact-finder would hardly be compelled to find Sow's story credible. We hold that the IJ provided "specific, cogent reason[s] for disbelief" of Sow's story. See Perinpanathan, 310 F.3d at 597; see also Diallo v. Mukasey, 508 F.3d 451, 454-55 (8th Cir. 2007) (IJ's discussion of forged birth certificate and documentary evidence that contradicted applicant's testimony sufficient to support adverse credibility finding).

Having failed to demonstrate past persecution as result of the IJ's adverse credibility determination, Sow is not entitled to a presumption of a well-founded fear of future persecution, and he offered no evidence to suggest a likelihood that he will be persecuted if he is removed to Mauritania. In any event, the IJ found that, even if

Applicability Provisions); Chen v. Mukasey, 510 F.3d 797, 800-01 (8th Cir. 2007). Thus, this new provision does not apply to Sow, because he filed his application in 1997.

Sow were entitled to a presumption of future persecution, improved conditions in Mauritania would rebut that presumption. We note that at least one other court has affirmed the BIA's determination that improved conditions rebutted the presumption of future persecution where a Fulani had established past persecution in Mauritania. See Ba v. Mukasey, 539 F.3d 1265, 1269 (10th Cir. 2008) ("The evidence relied upon by the BIA shows that the crisis that prompted the exile and detention of African Mauritanians like Mr. Ba has ended."). Accordingly, we affirm the BIA's decision upholding the denial of Sow's asylum claim as supported by substantial evidence. As a result, Sow has also failed to satisfy the more stringent standard for mandatory withholding of removal.

We conduct a separate analysis of a CAT claim only when the alleged threat of torture is based on evidence not related to an applicant's asylum claim. Che, 532 F.3d at 783; Ibrahim v. Gonzales, 434 F.3d 1074, 1080 (8th Cir. 2006). Sow's CAT claim is based on the same evidence as his asylum claim. Therefore, the BIA's denial of Sow's request for relief under the CAT is supported by substantial evidence.

III.

Accordingly, we deny Sow's petition for review.

_____