MELLOY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the opinion of the Court except with respect to whether Shaghil has presented sufficient evidence of future persecution.[5] In this case, the IJ and the BIA credited Shaghil’s evidence of future persecution but found it insufficient to prove a clear probability of persecution under the governing statute. In my view, a reasonable fact finder cannot make both findings because, if believed, Shaghil’s evidence is compelling — he will be severely persecuted if he returns to Pakistan because of his political and religious views. Accordingly, I would reverse the decision of the BIA.
“The standard for withholding of removal is a clear probability of persecution.... ” Guled v. Mukasey, 515 F.3d 872, 881 (8th Cir.2008). An alien may not be removed if he can show that it is more likely than not that “his life or freedom would be threatened upon removal because of his ‘race, religion, nationality, membership in a particular social group, or political opinion.’ ” Thu v. Holder, 596 F.3d 994, 999 (8th Cir.2010) (quoting 8 U.S.C. § 1231(b)(3)(A)). “A threat of future persecution can be established by demonstrating either an individualized risk or a pattern of persecution of similarly situated persons based on one of the five grounds.” Id.
“Persecution has been defined by this court as ‘the infliction or threat of death, torture, or injury to one’s person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion.’ ” Litvinov v. Holder, 605 F.3d 548, 553 (8th Cir.2010) (quoting Davila-Mejia v. Mukasey, 531 F.3d 624, 628 (8th Cir.2008)). While this Court reviews an adverse finding on the existence of persecution deferentially, this Court has stated that it will vacate such a finding when “the evidence [is] so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.” Osonowo v. Mukasey, 521 F.3d 922, 927 (8th Cir.2008) (internal quotation marks omitted). In making this determination, this Court should conclusively presume that all factual findings made below are accurate “unless any reasonable adjudicator would be compelled to conclude to the contrary.” Id. (internal quotation marks omitted).
Here, Shaghil presented substantial evidence in the form of his own testimony, testimony from an expert on Pakistan, and a State Department Report that he would be tortured or killed on account of his *838 religious and political beliefs should he return to Pakistan. Shaghil testified that, based upon his experiences growing up in Karachi, Pakistan and his knowledge of the community, he would likely be tortured or killed for his newfound political and religious beliefs at either the behest of the government or with the government’s acquiescence. He testified in part, after describing some of the violence religious minority groups experience at both the hands of the community and the police:
Q. Okay. Do you believe if you returned to Pakistan that you would be tortured?
A. 100 percent.
Q. Okay. Do you believe you would be killed?
A. Well, of course, they’re going to torture me and then maybe Pm not going to survive.
Likewise, his expert, Dr. Virani, testified that, based upon her expert knowledge of the “social and political circumstances” in Pakistan and her interview with Shaghil, Shaghil should fear for his life and well-being if he were to return to Pakistan. She specifically stated: “I think from the area that he comes and the family background that he shared with me, yes, he should have reasonable fear [of persecution]. In addition, with all the other political turmoil that’s going on in Pakistan ... he should have some reasonable fear about his life and his, his well-being there.” Later, after opining that it was more likely than not Shaghil would face persecution “of some sort,” Dr. Virani further stated:
Q. —and the definition there [in the Convention Against Torture] would be that it would be more likely than not that he would face torture were he to return to his country. Are you able to form an opinion and to offer an opinion on that regard?
A. With regard to specific torture or persecution of some sort, depending on whether it is opportunities again, depending on what part of Karachi he lived in, depending on how many people would be there to protect him, I think that, yeah, there would be some level of persecution. It is possible that his family may also be targeted and I think for that reason, if he did choose to stay here or if he has applied to stay here, I think that that would be reasonable, reasonable fear about persecution.
Finally, a State Department Report on Pakistan strongly indicated that Shaghil, as a convert away from Islam, could easily face severe persecution, stating in part:
While there is no law instituting the death penalty for apostates (those who convert from Islam), social pressure against conversion is so powerful that most conversions reportedly take place in secret. According to missionaries, police and other local officials harass villagers and members of the poorer classes who convert. Reprisals and threats of reprisals against suspected converts are common.
Since the BIA and the IJ credited all of Shaghil’s evidence of persecution and since the government failed to present any evidence on this issue, I believe that Shaghil has carried his burden of proof. Indeed, I cannot discern how a reasonable adjudicator can give credence to Shaghil’s evidence and still conclude that he has not shown a clear probability of persecution.
The majority holds to the contrary, discounting both the testimony of Dr. Virani and Shaghil. The majority disregards Dr. Virani’s testimony as “vague, fundamentally irrelevant, and insufficient to overcome our highly deferential standard of review” because “persecution” is a term of art for the courts to decide and because Dr. Virani’s testimony does not establish the “extreme concept” that is persecution. For support, the majority cites Dr. Virani’s *839 statement that Shaghil would face persecution “of some sort” in Pakistan. However, a fair reading of Dr. Virani’s entire testimony belies the majority’s conclusion. Dr. Virani opined that Shaghil should fear for his life and well-being should he return to Pakistan. Dr. Virani further spoke of torture in a similar manner to persecution, thereby indicating that Dr. Virani’s conception of persecution was far more than mere intimidation and low-level harassment, which this Court has found insufficient. Sholla v. Gonzales, 492 F.3d 946, 951 (8th Cir.2007). As the preceding excerpts indicate, Dr. Virani never equivocated on whether Shaghil would face severe mistreatment if he were to return to Pakistan. At most, Dr. Virani waffled on whether Shaghil’s family would also be targeted, stating it was “possible.”[6] Thus, Dr. Virani’s testimony, as an unchallenged expert opinion credited by both the IJ and the BIA, should alone present a material hurdle to dismissing Shaghil’s petition for withholding.
The majority also discounts Shaghil’s testimony. The majority characterizes his testimony as mere assertions, unsupported by evidence in the record and incapable of proving an objective likelihood of persecution. However, Shaghil’s testimony is corroborated both by the expert opinion of Dr. Virani and by the State Department’s report on Pakistan. Further, Shaghil’s testimony regarding his fear of persecution is based upon his own extensive knowledge of and experience in Pakistan, all of which constitutes evidence when, as here, the fact finders fully credit his testimony. See Osonowo, 521 F.3d at 927 (“A credibility determination is a finding of fact, which should be accepted unless any reasonable adjudicator would be compelled to conclude to the contrary.” (internal quotation marks omitted)). For example, Shaghil testified that his fear of persecution is based in part on his knowledge of how individuals in similar circumstances were treated, stating:[7]
Q. Have you read news stories? You’ve read—
A. Yes, I
Q. Okay.
A. —that’s the newspaper (indiscernible).
Q. Okay. And do you know what has happened to those people like you?
*840 A. They, you’re going to find the dead body on that street somewhere and it’s not going to be—
Q. Has that been in the news?
A. Yes.
While Shaghil did not provide many personal accounts of the persecution of religious and political minorities in Pakistan, his general knowledge of the conditions in Pakistan should not be dismissed out-of-hand when the IJ finds all of his testimony credible. Accordingly, to give meaning to the administrative findings of fact in this case, I believe the Court should conclude that Shaghil presented sufficient evidence to prove a clear probability of persecution.
For the foregoing reasons, I concur in part and dissent in part.

. For the same reasons I believe Shaghil has presented sufficient evidence of persecution, I also believe that he has met his more-rigorous burden of proof under the Convention Against Torture. I focus my comments only on persecution because " 'persecution' for the purposes of withholding of removal may encompass abuse that is less severe than 'torture' for the purposes of the CAT.” Malonga v. Mukasey, 546 F.3d 546, 555 (8th Cir.2008).

. As cited by the majority, the IJ quotes Dr. Virani as testifying that "perhaps” Shaghil would be persecuted. However, a close reading of the transcript reveals that Dr. Virani used the word only once to describe whether Shaghil's outspokenness would further increase the already-existing probability that Shaghil would be persecuted. More specifically, she testified regarding Shaghil:
Q. Okay. And, in fact, even since we’ve had the last hearing, there has been additional turmoil within the Moslem world over a (indiscernible). Are you familiar with that situation?
A. Yes, I am.
Q. Are you familiar with what he has endured himself in that regard?
A. He hasn't shared with me, but, but he is really vocal about his views, so he may be.
Q. And would that make things even more extreme to this date?
A. Well, in the present mindedness of the statement, perhaps that would, yeah----

. Shaghil also testified on cross examination:
Q. And where in all of this record can you show me that the government of Pakistan seeks out people who have changed their faith? Did you see any documents in any of this? Are you aware of any news stories that the government has persecuted or harmed people who have simply changed their faith?
A. Yes, sir—
Q. Oh.
A. —they do over there.
Q. Okay. What happens?
A. Well, those people, if they're — first of all, they are tortured ...